Rodney J. McCORMICK, Appellant
(Defendant below),

v.

STATE of Indiana, Appellee
(Plaintiff below).

No. 46S03–0402–CR–91.

Supreme Court of Indiana.

Feb. 26, 2004.

Transfer Granted Feb. 26, 2004.

Donald W. Pagos, Sweeney, Dabagia, Thorne, Janes & Pagos, Michigan City, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Ellen H. Meilaender, Deputy Attorney General Indianapolis, IN, Attorneys for Appellee.

ON PETITION TO TRANSFER FROM THE INDIANA COURT OF APPEALS, NO. 46A03–0202–CR–42

RUCKER, Justice.

This case presents the question of how a court should respond in the context of a *Batson* claim when a party offers multiple rationales for a peremptory strike, some of which are permissible and one of which is not.

## Background

Rodney McCormick, an African American male, was charged with dealing in cocaine, a class A felony. Two African American venire persons were called to serve on the panel. During voir dire one

of the two was challenged for cause and removed. The other, juror Donaldson, confirmed that she was a real estate broker and part-time postal worker; generally responded either "yes" or "no" to several questions posed by both the State and the defense; and acknowledged that a distant relative once suffered from a drug problem, but the experience would have no bearing on her in resolving the issues presented in McCormick's case.

The State sought to exercise a peremptory challenge to remove juror Donaldson from the panel. McCormick objected asserting that the State was "attempting to improperly exclude all black jurors from this jury." R. at 379. Two deputy prosecutors were assigned to try McCormick. When asked by the trial court for their reasons in excluding the juror, one deputy explained, "[T]hrough my questioning I seem to recall that she was uncomfortable with the process. I felt that she was very forthcoming in terms of assuring me that she would be able to keep an open mind to both the State and the Defendant." *Id.* at 381. The second deputy replied:

> And my notes indicate, she appears uncomfortable and distraught. And I also note that she's a realtor and has relationships with (inaudible) that I made that note in there. I—and that she'd be unable to do difficult things for fear of offending people and *nothing more difficult than passing judgment on one, so, so certainly one—a member of ones* [sic] *own in the community.*

*Id.* (emphasis added). The trial court overruled McCormick's objection, and juror Donaldson was removed from the panel. The trial proceeded in due course, and McCormick was convicted as charged. On appeal McCormick raised several issues for review, one of which was that the State used a racially based peremptory challenge. The Court of Appeals affirmed in

an unpublished memorandum decision. *See McCormick v. State,* 780 N.E.2d 878 (Ind.Ct.App.2002). We grant McCormick's petition to transfer.

### Discussion

 The exercise of racially discriminatory peremptory challenges is constitutionally impermissible. *Wright v. State,* 690 N.E.2d 1098, 1104 (Ind.1997). In order to establish a prima facie case of purposeful discrimination in the selection of a jury, a defendant must show: (1) that the prosecutor has exercised peremptory challenges to remove members of a cognizable racial group from the venire; and (2) that the facts and circumstances of the defendant's case raise an inference that the prosecutor used that practice to exclude venire persons from the jury due to their race. *Bradley v. State,* 649 N.E.2d 100, 105 (Ind.1995) (citing *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986)). Once a prima facie showing has been established, the burden shifts to the State to present an explanation for challenging such jurors. *Batson,* 476 U.S. at 97, 106 S.Ct. 1712. The trial court then has a duty to determine whether the defendant has established purposeful discrimination. *Id.* at 98, 106 S.Ct. 1712. In *Purkett v. Elem,* 514 U.S. 765, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995), the United States Supreme Court refined the test for determining whether a juror has been struck for a reason violative of *Batson.* The Court declared that the race-neutral explanation must be more than a mere denial of improper motive, but it need not be "persuasive, or even plausible." *Id.* at 768, 115 S.Ct. 1769. " '[T]he issue is the facial validity of the prosecutor's explanation. Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral.' " *Id.* (quoting *Hernandez v. New York,* 500 U.S.

352, 360, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991) (plurality opinion)).

■ In the case before us the trial court was not persuaded that McCormick carried his burden of making a prima facie showing of racial discrimination. Specifically the trial court said, "So basically what it gets down to is we have one African American person sitting in a jury box right now. And I don't think that the Defendant has established a pattern of what I'll call racial profiling or racial exclusion." R. at 383. Nonetheless, the trial court required the State to set forth its reasons for peremptorily challenging juror Donaldson in order to "preserve the record." *Id.* at 382.

■ It is true that the removal of some African American jurors by the use of peremptory challenges does not, by itself, raise an inference of racial discrimination. *Kent v. State,* 675 N.E.2d 332, 340 (Ind.1996). However, the removal of "the only ... African American juror that could have served on the petit jury" does "raise an inference that the juror was excluded on the basis of race." *McCants v. State,* 686 N.E.2d 1281, 1284 (Ind.1997); *see also Ashabraner v. Bowers,* 753 N.E.2d 662, 667 (Ind.2001) (observing that the removal of the "only black member of the panel" standing alone "establishes a prima facie case" of discrimination); *cf. Graham v. State,* 738 N.E.2d 1096, 1100 (Ind.Ct.App. 2000) (finding that the defendant established a prima facie case of discrimination where State used its peremptory challenge to remove the only two African American potential jurors from the venire), *trans. not sought.* Here, the State used a peremptory challenge to remove the only African American venire person on the panel. Thus, contrary to the trial court's determination, it is clear that McCormick made at least a prima facie showing of purposeful discrimination in the jury selection process.

■ Nonetheless, where as here, a prosecutor has offered its race-neutral explanation for the peremptory challenge and the trial court has ruled on the ultimate question of intentional discrimination, the preliminary issue of whether the defendant had made a prima facie showing of purposeful discrimination becomes moot. *Hernandez,* 500 U.S. at 359, 111 S.Ct. 1859 (plurality opinion). We thus examine the State's proffered explanation to determine whether it is in fact race-neutral. A neutral explanation means "an explanation based on something other than the race of the juror." *Id.* at 360, 111 S.Ct. 1859.

The deputy prosecutors offered several reasons for their strike: (i) juror Donaldson was distraught; (ii) she looked uncomfortable; and (iii) her answers to questions made her appear uncomfortable with the process. Each of these reasons is a permissible race-neutral explanation for the exercise of a peremptory challenge. *See, e.g., J.E.B. v. Alabama ex rel. T.B.,* 511 U.S. 127, 148, 114 S.Ct. 1419, 128 L.Ed.2d 89 (1994) (O'Connor, J., concurring) ("[A] trial lawyer's judgments about a juror's sympathies are sometimes based on experienced hunches and educated guesses, derived from a juror's ... 'bare looks and gestures.' "). By contrast, another reason given for the strike—that the juror would find it difficult "passing judgment on a member of ones [sic] own in the community"—is not race-neutral. The challenged juror and McCormick apparently shared but one thing in common: membership in a cognizable racial group. To remove the juror because she may find it difficult to sit in judgment of "one's own" is an assumption that the juror's objectivity would be impaired because McCormick is black. This assumption, which is clearly forbidden by the Equal Protection Clause, *Batson,*

476 U.S. at 97, 106 S.Ct. 1712, is based on a stereotypical view that African Americans, because of their race, will relate to other African Americans in a way that may preclude them from basing a verdict solely on the evidence presented at trial. In sum, the "passing judgment" on "one's own" explanation for striking juror Donaldson was impermissibly race-based.[1]

Because the State gave multiple reasons for its strike, some of which were permissible and one of which was not, we are faced with the question of whether the existence of permissible reasons for exercising a peremptory strike is sufficient to overcome an impermissible one. The United States Supreme Court has yet to address the question of whether the existence of a single discriminatory reason for a peremptory strike results in an automatic *Batson* violation when race-neutral reasons also have been articulated. However, some federal circuits follow an approach taken from other areas of equal protection jurisprudence and have adopted what is referred to as "dual motivation" analysis.[2] This approach proceeds under the theory that "[a] person may act for more than one reason" and that when a prosecutor offers both legitimate and illegitimate reasons for a strike, further analysis is required. *Howard v. Senkowski,* 986 F.2d 24, 26 (2d Cir.1993). More specifically, under dual motivation analysis, if the trial court finds that the proponent of the strike has articulated both race-based and race-neutral reasons for a peremptory strike, then the proponent bears the burden of demonstrating that the strike would have been exercised even in the absence of any discriminatory motivation. *Wallace v. Morrison,* 87 F.3d 1271, 1274–75 (11th Cir. 1996); *see also King v. Moore,* 196 F.3d 1327, 1335 (11th Cir.1999) ("When the motives for striking a prospective juror are both racial and legitimate, *Batson* error arises only if the legitimate reasons were not in themselves sufficient reason for striking the juror."); *accord Gattis v. Snyder,* 278 F.3d 222, 235 (3d Cir.2002), *cert. denied,* 537 U.S. 1049, 123 S.Ct. 660, 154 L.Ed.2d 524 (2002); *Weaver v. Bowersox,* 241 F.3d 1024, 1032 (8th Cir.2001); *Jones v. Plaster,* 57 F.3d 417, 421 (4th Cir.1995).

On the other hand, a number of state courts have rejected the dual motivation analysis for reviewing *Batson* claims and

1. The State counters the rationale is not race-based but rather is grounded on the trial deputy's belief that the juror's "job as a realtor might make it difficult for her to reach an unpopular decision." Br. of Appellee at 12–13. The record shows that after jury selection and on the second day of trial, McCormick renewed his objection to the State's use of a peremptory challenge to remove juror Donaldson. In response, both deputy prosecutors further elaborated on their reasons for the strike. In relevant part, one of the deputies explained that he had consulted with a colleague and that the colleague "knew she was a realtor and that his impression of Realtors are they try to make everybody happy. And that she would she may have a difficult time doing a difficult decision such as convicting somebody." R. at 517. Although this proffered rationale may serve as an additional race-neutral reason for the State's challenge, it does not serve to vitiate the race-based reason proffered the day before.

2. The Supreme Court has adopted this analysis in other areas of equal protection jurisprudence as well. *See Hunter v. Underwood,* 471 U.S. 222, 231–32, 105 S.Ct. 1916, 85 L.Ed.2d 222 (1985); *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 285–87, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977); *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.,* 429 U.S. 252, 270 n. 21, 97 S.Ct. 555, 50 L.Ed.2d 450 (1977). However, although the full Supreme Court has never addressed the issue, in a dissent to the denial of certiorari, Justice Marshall joined by Justice Brennan contended that dual motivation analysis is not appropriate in analyzing *Batson* claims. *See Wilkerson v. Texas,* 493 U.S. 924, 110 S.Ct. 292, 107 L.Ed.2d 272 (1989) (Marshall, J., dissenting).

instead have adopted what is referred to as the "tainted" approach. In simple terms, "[r]egardless of how many other nondiscriminatory factors are considered, any consideration of a discriminatory factor directly conflicts with the purpose of *Batson* and taints the entire jury selection process." *Arizona v. Lucas,* 199 Ariz. 366, 18 P.3d 160, 163 (Ariz.Ct.App.2001); *see also Rector v. Georgia,* 213 Ga.App. 450, 444 S.E.2d 862, 865 (1994) ("[T]he trial court erred in ruling that other purportedly race neutral explanations cured the element of the stereotypical reasoning employed by the State's attorney in exercising a peremptory strike."); *South Carolina v. Shuler,* 344 S.C. 604, 545 S.E.2d 805, 811 (2001) ("[A] racially discriminatory peremptory challenge in violation of *Batson* cannot be saved because the proponent of the strike puts forth a non-discriminatory reason."); *Moore v. Texas,* 811 S.W.2d 197, 200 (Tex.Ct.App.1991) (finding a *Batson* violation where a juror would have a problem assessing punishment (valid) and was member of a minority club (invalid)); *Wisconsin v. King,* 215 Wis.2d 295, 572 N.W.2d 530, 535 (Wis.Ct. App.1997) ("[W]here the challenged party admits reliance on a prohibited discriminatory characteristic, we do not see how a response that other factors were also used is sufficient rebuttal under the second prong of *Batson*.").

■ We endorse the approach taken by the foregoing jurisdictions and conclude that it is not appropriate to apply the dual motivation analysis in the *Batson* context. Such an analysis in our view is inconsistent with the "facially valid" standard announced by the Supreme Court in *Purkett.* Further, we recognize that *Batson* protects against only the most conspicuous and egregious biases. "To excuse such obvious prejudice because the challenged party can also articulate nondiscriminatory

reasons for the peremptory strike would erode what little protection *Batson* provides against discrimination in jury selection." *Payton v. Kearse,* 329 S.C. 51, 495 S.E.2d 205, 210 (1998). Instead, we conclude the tainted approach is the appropriate analytical tool in evaluating *Batson* claims. As applied to the facts in this case, the State's impermissible racially based peremptory challenge tainted any nondiscriminatory reasons it may have proffered. Accordingly, the State failed to meet its burden under the second prong of *Batson* to come forward with a race-neutral explanation for its peremptory strike. McCormick is thus entitled to a new trial.

### Conclusion

We reverse the judgment of the trial court and remand this cause for a new trial.

SHEPARD, C.J., and DICKSON, SULLIVAN and BOEHM, JJ., concur.