Cletus JONES, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 49A02–0512–CR–1196.

Court of Appeals of Indiana.

Jan. 17, 2007.

Katherine A. Cornelius, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Ellen H. Meilaender, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

SHARPNACK, Judge.

Cletus Jones appeals his conviction for robbery, a class C felony.[1] Jones raises two issues, which we restate as:

I. Whether the trial court properly denied Jones's challenge based on *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 1719, 90 L.Ed.2d 69 (1986); and

II. Whether the evidence is sufficient to sustain Jones's conviction for robbery.

We affirm.

The relevant facts follow. On June 1, 2004, Jones entered the National City Bank where Diamond Garner and Tina Wright worked. Garner and Wright both saw Jones and heard his voice. On June 4, 2004, Jones returned to the National City Bank. Jones entered the bank, approached Garner's teller window, placed a note in her window demanding money, and loudly stated, "I just need to get this done as

quickly as possible." Transcript at 29–30. Jones wore a disguise, but Garner and Wright recognized him as the same person who had been in the bank on June 1st. Garner complied with Jones's demand and gave him the money. Jones was later positively identified as the person who robbed the bank on June 4th.

The State charged Jones with robbery as a class C felony. During voir dire at Jones's jury trial, the prosecutor used his peremptory challenges to exclude the only two African–American jurors on the panel. Jones made a *Batson* motion stating that:

> [t]here were 30 jurors; potential jurors, that were seated, two of which were minorities, or African Americans. We struck neither. The State struck both Mr. Johnson and Ms. Lloyd. And most notably Ms. Lloyd was on the second set of jurors, Judge, and I don't believe she said a single word. I did not speak with her directly. I don't think the State asked her a single question. As I look back at the record, I don't think she even opened her mouth. That certainly rises to the level of a pattern. And I think that the jury that's been selected is not a fair—same thing—not a fair pool of Mr. Jones's peers.

*Id.* at 16–17. In response to Jones's challenge, the State responded:

> [State]: I did speak with Ms. Lloyd. And one of the questions, the big crux of my voir dire is to testimony only. And I asked her very specifically on that question, could you convict somebody on testimony only? And her response was no. That's a fair and legitimate reason—and since this case hinges on testimony of the witnesses at this point, that's the reason I struck her.

---

1. Ind.Code § 35–42–5–1 (2004).

[Court]: And what about Mr. Johnson then?

[State]: Mr. Johnson. Speaking of him, he had a brother-in-law that had been killed. His attitude was—when I asked him about the same testimony question, whether he could convict on testimony only and—using the example of being robbed and him being the only witness, if the jury found him not guilty, his attitude was, well, that's just the way it goes.

\* \* \* \* \*

[State]: His attitude was more of the fact that he could deal with that and then—and his punishment will come later in life through a higher power. And while that maybe [sic] an attitude that's all right [sic] for normal society, I think a juror needs to have a little more than just an indifference as to one way or the other. I think the jury needs to have— if they're going to sit as the trier of fact, needs to have a something more of (indiscernible) attitude at that point than just that it happens. So that's the reason Mr. Johnson was struck.

*Id.* at 17–18. In overruling Jones's *Batson* challenge, the trial court stated:

Well, there were only two African American jurors on our panel. The State's given a race neutral reason for at least one of them. And so I think that strikes down a pattern of striking African Americans just because they're African Americans, so your challenge is noted but overruled.

*Id.* at 19. A jury found Jones guilty of robbery.

## I.

The first issue is whether the trial court properly denied Jones's *Batson* challenge. "The exercise of racially discriminatory peremptory challenges is con-stitutionally impermissible." *McCormick v. State,* 803 N.E.2d 1108, 1110 (Ind.2004). "Upon appellate review, a trial court's decision concerning whether a peremptory challenge is discriminatory is given great deference, and will be set aside only if found to be clearly erroneous." *Forrest v. State,* 757 N.E.2d 1003, 1004 (Ind.2001). Evaluation of a *Batson* claim requires three steps. *Id.*

First, the party contesting the challenge must make out a prima facie case of racial discrimination by demonstrating that: (1) the juror is a member of a cognizable racial group; (2) [the prosecutor] has exercised peremptory challenges to remove that group's members from the jury; and (3) the facts and circumstances of this case raise an inference that the exclusion was based on race. Second, upon such a showing, the burden of production shifts to the proponent of the peremptory challenge to provide a race-neutral explanation. If the explanation, on its face, is based on something other than race, the explanation will be deemed race-neutral. Third, the trial court must determine whether the party contesting the peremptory challenge has proved purposeful racial discrimination.

*Id.* (internal citations omitted).

In *Purkett v. Elem,* 514 U.S. 765, 115 S.Ct. 1769 [131 L.Ed.2d 834] (1995)[, *reh'g denied*], the United States Supreme Court refined the test for determining whether a juror has been struck for a reason violative of *Batson.* The Court declared that the race-neutral explanation must be more than a mere denial of improper motive, but it need not be persuasive, or even plausible. The issue is the facial validity of the [State's] explanation. Unless a discriminatory intent is inherent in the [State's]

explanation, the reason offered will be deemed race neutral.

*McCormick,* 803 N.E.2d at 1111. (internal citations omitted).

Here, Jones argues that the trial court used the wrong standard to evaluate his *Batson* challenge. To support his argument, Jones states: "[t]he trial judge in her ruling clearly believed the State had to have struck two African Americans improperly to establish a 'pattern' before *Batson* would apply." Appellant's Brief at 10. Jones points to the trial court's ruling on his *Batson* challenge, which states: "Well, there were only two African American jurors on our panel. The State's given a race neutral reason for at least one of them. And so I think that strikes down a pattern of striking African Americans just because they're African Americans, so your challenge is noted but overruled." Transcript at 19.

If, as Jones argues, the trial judge did "[believe] the State had to have struck two African Americans improperly to establish a 'pattern' before *Batson* would apply," such a rationale would be faulty. Appellant's Brief at 10. Under *Batson,* "once the opponent of a peremptory challenge has made out a prima facie case of racial discrimination (step one), the burden of production shifts to the proponent of the strike to come forward with a race-neutral explanation (step two)." *Purkett,* 514 U.S. at 767, 115 S.Ct. 1769. "If a race-neutral explanation is tendered, the trial court must then decide (step three) whether the opponent of the strike has proved purposeful racial discrimination." *Id.* (citing *Hernandez v. New York,* 500 U.S. 352, 358–59, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991) (plurality)).

■ Here, Jones made a prima facie case under *Batson.* Our Supreme Court has held that where the only African American venire persons are removed from the panel, a prima facie case is established, "and, at a minimum, it is evidence of discrimination that must weigh in the balance." *Ashabraner v. Bowers,* 753 N.E.2d 662, 667 (Ind.2001).

After Jones established a prima facie case of racial discrimination, the State offered justifications for its peremptory strikes of jurors Lloyd and Johnson. Lloyd was struck because she stated that she could not convict someone based on testimony alone. Johnson was struck because of what the State felt was an indifferent attitude "regarding temporal justice" on Johnson's part. Appellee's Brief at 7.

In its ruling, the trial court stated: "Well, there were only two African American jurors on our panel. The State [has] given a race neutral reason for *at least* one of them." Transcript at 19. (emphasis added) It is unclear whether the trial court meant that a race-neutral reason was given for one of the challenges but not the other. Moreover, it is unclear to which reason the trial court was referring; so, the court could be referring to either or both given reasons. This raises a question as to whether a trial court must explicitly rule on *each* peremptory challenge.

■ Logic requires that where a prima facie case of racial discrimination has been made as to the peremptory challenges to two or more jurors, a nonracial reason for challenge must be provided as to each juror. The improper peremptory challenge to any one juror would require a new trial. *See McCormick,* 803 N.E.2d at 1113.[2] Therefore, a nonracial reason for

---

**2.** The Indiana Supreme Court endorsed the "tainted approach" taken by other jurisdictions in evaluating *Batson* claims. *McCormick,* 803 N.E.2d at 1113. "Regardless of

peremptory challenge must be given for each.

██ Here, the trial court's statement that the State's reason for excluding at least one of the two jurors was race-neutral is ambiguous. However, ambiguity notwithstanding and granting due deference to the trial court, we cannot say that the trial court's ruling here was clearly erroneous. The State gave a separate reason for each of its peremptory challenges. Moreover, each of those reasons appears neutral on its face. "A neutral explanation means an explanation based on something other than the race of the juror." *McCormick*, 803 N.E.2d at 1111. If the explanation, on its face, is based on something other than race, the explanation will be deemed race-neutral. *Forrest*, 757 N.E.2d at 1004.

██ Here, the prosecutor's voir dire focused on probing how jurors would assess a witness's credibility and whether jurors could convict based on a witness's testimony alone without corroborating physical evidence. In striking juror Lloyd, the State looked at the fact that she stated that she could not convict someone based on testimony alone. State argued that its case "[hinged] on testimony of the witnesses at this point, that's the reason I struck her." Transcript at 17. We find that this is a race-neutral explanation for the strike. Therefore, we cannot say that the strike was improper.

██ In striking Johnson, the State argues that when they asked Johnson about convicting on testimony alone, in the context of his being robbed and him being the only witness and a jury finding the perpetrator not guilty:

> his attitude was more of the fact that he could deal with that and then—and his punishment will come later in life through a higher power. And while that maybe [sic] an attitude that's all right [sic] for normal society, I think a juror needs to have a little more than an indifference as to one way or the other.

*Id.* at 18. We find that this explanation is based on something other than race. Further, we find nothing in this explanation that appears racially discriminatory. Jones offered no argument to the trial court as to why the State's explanation for striking Johnson should be disbelieved and found to be pretext, masking a discriminatory intent for striking Johnson from the jury.[3] Therefore, we are unable to find that the strike was improper. *See, e.g., Williams v. State*, 818 N.E.2d 970, 974 (Ind.Ct.App.2004) (holding that trial court's decision was not clearly erroneous where the trial court overruled *Batson* objection based on the State peremptorily striking an African–American juror due to his "dismissive attitude with respect to the case") *vacated in part and summarily aff'd in pertinent part by Williams v. State*, 838 N.E.2d 1019 (Ind.2005).

how many other nondiscriminatory factors are considered, any consideration of a discriminatory factor directly conflicts with the purpose of *Batson* and taints the entire jury selection process." *Id.* The Court held that the defendant was entitled to a new trial where an impermissible racially based peremptory challenge was given. *Id.* (internal citations omitted).

**3.** The Indiana Supreme Court recently held that where the justifications for peremptorily

striking a juror are facially neutral and the trial court must determine whether purposeful discrimination has been established, "the ultimate burden of persuasion regarding racial motivation rests with, and never shifts from, the opponent of the strike." *Highler v. State*, 854 N.E.2d 823, 828 (Ind.2006) (citations omitted). In our review of the record, Jones has not met this burden. Moreover, the State has met its burden of presenting a race-neutral explanation for striking both jurors.

## II.

The next issue is whether the evidence is sufficient to sustain Jones's robbery conviction. When reviewing claims of insufficiency of the evidence, we do not reweigh the evidence or judge the credibility of witnesses. *Jordan v. State,* 656 N.E.2d 816, 817 (Ind.1995), *reh'g denied.* Rather, we look to the evidence and the reasonable inferences therefrom that support the verdict. *Id.* We will affirm the conviction if there exists evidence of probative value from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. *Id.*

Ind.Code § 35–42–5–1 (2004) provides in pertinent part: "A person who knowingly or intentionally takes property from another person or from the presence of another person: ... by putting any person in fear ... commits robbery, a Class C felony." Jones appears to argue that the evidence is insufficient to convict him of robbery because the State failed to prove that Jones placed Garner in fear. "While 'putting in fear' is not defined by statute, case law reflects that a fear of bodily injury or personal harm is required to support a conviction requiring a person be put in 'fear'." *Rigsby v. State,* 582 N.E.2d 910, 912 (Ind.Ct.App.1991). Although Garner's fear subsequently subsided after Jones never mentioned or displayed a weapon, Garner testified that when Jones handed her the note, she felt nervous, scared, uncomfortable, and a little fearful because she felt that Jones might do something to her. We find that this is sufficient to support the 'placing in fear' element. The statute provides the victim must be put in fear. See Ind.Code § 35–42–5–1(2) (2004). It does not provide that the victim must remain in fear. *See, e.g., Clemmons v. State,* 538 N.E.2d 1389, 1390 (Ind.1989) (finding that victim was placed in fear of defendant was supported by her testimony that she was in fear). Moreover, Jones asserts that Garner's testimony regarding her fear was a result of prompting by the State during questioning. Nevertheless, the Indiana Supreme Court has held that "it is not necessary for a victim to testify that he or she was actually put in fear." *Id.* "There only need be evidence from which the jury can infer that the victim was in fact put in fear." *Id.* In addition to the fact that Garner testified that she was fearful, the record indicates that she remembered Jones coming into the bank three days before the robbery. On the day of the robbery, Jones entered the bank, approached Garner's teller window, gave her a note demanding money, and loudly exclaimed that he needed "to get this done as quickly as possible." Transcript at 29–30. Based on the evidence, a reasonable trier of fact could infer that Garner was placed in fear. *See, e.g., Perkins v. State,* 261 Ind. 209, 301 N.E.2d 513, 514 (1973) (finding that "[i]f there were no direct evidence of fear, the trier of fact could infer fear from the circumstances of the robbery").

For the foregoing reasons, we affirm Jones's conviction for robbery.

Affirmed.

MATHIAS, J., concurs.

KIRSCH, C.J., dissents with separate opinion.

KIRSCH, Chief Judge, dissenting.

I respectfully dissent.

Since the decision of the United States Supreme Court in *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), our subsequent jurisprudence has largely eroded what seemed at the time to be a landmark decision. Today, few prosecutors or other trial counsel are so inept that, when faced with a *Batson* challenge, they are unable to utter an explanation

that is facially racially neutral for striking all members of a cognizable racial group from a prospective jury panel. And, the burden of showing purposeful racial discrimination has proved largely unsustainable within the confines of any individual jury selection process. As a result, two decades after *Batson,* its goal of ensuring "that no citizen is disqualified from jury service because of his race" remains elusive. *Id.* at 99, 106 S.Ct. 1712.

Although approximately twenty-five per cent of Marion County is African–American,[4] only two out of thirty prospective jurors in this case were African–American. Those two were struck by the prosecutor ensuring a jury with no African–American members. The reasons given by the prosecutor were—on their face—racially neutral.

I would like to see our jurisprudence move to the point that to use a peremptory challenge to strike the only prospective members of a cognizable racial group from a prospective jury requires more than a showing of racial neutrality. I would like to see such challenges treated as challenges for cause. Finally, I would like to see the burden placed on the party who exercises peremptory challenges to strike all members of a racial group to show an absence of racial motivation, not on the party who opposes the challenges.

The law is not there yet. And, until it gets there, the role of the trial judge in ruling on *Batson* challenges is critical.

The trial court has seen the prospective jurors, heard their answers, observed their affect. The trial court has heard the peremptory challenges and the reasons for them. In *Forrest v. State,* 757 N.E.2d 1003, 1004 (Ind.2001), our Supreme Court said, "[T]he trial court must determine whether the party contesting the peremp-

tory challenge has proved purposeful racial discrimination." *See also Highler v. State,* 854 N.E.2d 823, 828 (Ind.2006) (Trial court must determine whether purposeful discrimination has been established.)

Here, the trial court here utilized an improper standard—That the challenger must show a pattern of racial discrimination. It then found a racially neutral reason for "at least one" of the peremptory strikes, but failed to make a determination as to the other. The majority concludes that the trial court's methodology was improper, but it then proceeds itself to make the determinations that the prosecutor's reason for the second peremptory challenge was racially neutral and the challenger failed to show purposeful racial discrimination.

Here is where I part from my colleagues. I think that only the trial judge can determine whether the peremptory challenge is racially motivated and only the trial judge can decide whether purposeful discrimination has been shown. I do not think that we should make these determinations from reviewing a cold record. Accordingly, I would reverse Jones' conviction and remand for a new trial.