Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Aug 07 2012, 9:12 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**ERNEST P. GALOS**
South Bend, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**AARON J. SPOLARICH**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

RAYMON JOHNSON,                )
                              )
    Appellant-Defendant,       )
                              )
        vs.                 )    No. 71A04-1111-CR-636
                              )
STATE OF INDIANA,              )
                              )
    Appellee-Plaintiff.        )

APPEAL FROM THE ST. JOSEPH SUPERIOR COURT
The Honorable Jane Woodward Miller, Judge
Cause Nos. 71D03-1105-FD-408 & 71D01-1006-FD-528

**August 7, 2012**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**MATHIAS, Judge**

Raymon Johnson ("Johnson") was convicted in St. Joseph Superior Court of Class D felony battery on a law enforcement officer resulting in bodily injury in one case and his probation in another case was revoked because of his commission of this crime. Johnson appeals and presents four issues, which we reorder and restate as:

I.   Whether the trial court erred in overruling Johnson's <u>Batson</u> challenge to the State's exercise of a peremptory strike;

II.  Whether the State presented evidence sufficient to support Johnson's conviction;

III. Whether the State presented evidence sufficient to support the trial court's determination that Johnson violated the terms of his probation; and

IV.  Whether the trial court abused its discretion by refusing Johnson's tendered instruction on the lesser-included offense of battery as a Class A misdemeanor.

We affirm.

**Facts and Procedural History**

On the night of May 23, 2011, Officer Theodore Robert ("Officer Robert") of the South Bend Police Department was working for the South Bend Housing Authority when he was dispatched to the South Bend Apartments, a small public housing complex, to investigate a complaint of loud noise. When he drove down the cul-de-sac he saw a small crowd of people on the porch area in front of the apartment building. Several of these people retreated into the apartments when they saw Officer Robert arrive. The ones that remained on the porch area were defendant Johnson, his mother Juanita Johnson

("Juanita") and his cousin Adam Kuspa ("Kuspa"). As Officer Robert approached the porch area, he saw empty beer bottles lying on the ground.[1]

Officer Robert attempted to identify the three individuals remaining in the porch area. Kuspa provided the officer with his name and an identification card. Johnson verbally identified himself, but did not provide Officer Robert with his identification card because he knew there was an active warrant for his arrest for failure to pay child support. Juanita did not have an identification card, and told Officer Robert only that her name was "Miss Johnson." At this point, Johnson's brother, Raheem Johnson ("Raheem"), came outside from one of the apartments. He refused Officer Robert's request to identify himself and attempted to return to the apartment whence he came. Officer Robert told Raheem to remain outside, and shut the door to the apartment to ensure that Raheem did not go back inside.

Officer Robert then attempted to further identify Juanita. While he questioned her concerning her identity, Juanita grabbed Officer Robert's wrist. Officer Robert removed her hand and told her not to touch him. Juanita then immediately grabbed Officer Robert's wrist a second time. Officer Robert again removed her hand and warned her a second time not to touch him. This caused Raheem to step within a foot of Officer Robert and tell him, "this is my mother, she's 50 years old, you don't have to talk to her that way." Tr. p. 99. Officer Robert told Raheem to step away, and Raheem complied. Officer Robert asked if any of the four individuals lived at the apartment complex or

---

[1] According to Officer Robert, it was against the Housing Authority's rules to drink alcohol outside the apartment building.

knew any of the tenants. All four stated that they did not live at the apartment complex and could not identify any tenants.

Even though he had told Officer Robert that he did not live in the apartment complex and did not know any tenants, Raheem again attempted to go back inside the building. Officer Robert stepped in between Raheem and the door to prevent him from going inside. Juanita then grabbed Officer Robert's wrist for a third time. Officer Robert removed her hand and told her yet again not to touch him. This prompted Raheem to again confront Officer Robert in close proximity, face-to-face. Officer Robert pushed Raheem away with one hand. Raheem reacted by swinging his fists at Officer Robert. Before Raheem could strike him, Officer Robert knocked Raheem to the ground and attempted to handcuff him. As he attempted to handcuff Raheem, and as Raheem continued to resist and strike Officer Robert, Johnson jumped on the officer's back. Officer Robert then removed Johnson from his back and stood face-to-face with Johnson. Raheem and Johnson continued to strike Officer Robert, so Officer Robert radioed for backup.

Johnson and his brother continued to fight Officer Robert as they moved from the porch area to the cul-de-sac. At this point, Juanita joined in the attack against Officer Robert. When the combatants reached the middle of the cul-de-sac, Kuspa had joined in the attack. In an attempt to regain control of the situation, Officer Robert reached for his taser or his service pistol, but his belt had been turned around during the fight, so Officer Robert could not immediately access his weapons. As the officer attempted to straighten his belt, Johnson, Raheem, Juanita, and Kuspa continued to strike Officer Robert. When

4

Officer Robert was finally able to retrieve his pistol, he retreated several feet, pointed the gun, and warned his attackers to stay back. As his attackers continued their advance, Officer Robert determined that he had not been subject to deadly force, so he re-holstered his weapon. Instead, Officer Robert decided to attempt to handcuff Raheem again, as Raheem was the individual who had initiated the fight.

When Officer Robert attempted to handcuff Raheem, Raheem fled from Officer Robert on foot. Officer Robert gave chase and quickly caught up with him and began to handcuff him. As he did so, the other three combatants resumed their attack upon him. As backup officers arrived, Officer Robert was able to handcuff Raheem, but Johnson had fled. After searching one other apartment unit, the police found Johnson hiding in a closet in another unit and arrested him. As a result of the fight, Officer Robert suffered a wound on the palm of his hand in addition to scratches and a painful bruise on his right arm. Officer Robert's eyeglasses were destroyed during the fight, and his vest was ripped and torn to such an extent that it had to be discarded.

On May 25, 2011, the State charged Johnson with Class D felony battery on a law enforcement officer and Class A misdemeanor resisting law enforcement in Cause No. 71D03-1105-FD-408 ("Cause FD-408"). Johnson had earlier pleaded guilty to Class D felony possession of marijuana in Cause No. 71D01-1006-FD-528 ("Cause FD-528") and was on probation for this offense at the time of the attack on Officer Robert. On June 24, 2011, the State filed a petition to revoke Johnson's probation in Cause FD-528 as a result of the new pending charges in Cause FD-408.

A joint jury trial and probation revocation hearing was held on September 28 and 29, 2011. At the conclusion of the trial, the jury found Johnson guilty of Class D felony battery on a law enforcement officer, but acquitted him of resisting law enforcement. The trial court then found that Johnson had violated the terms of his probation by committing a new criminal offense. On October 26, 2011, the trial court sentenced Johnson to two years of incarceration as a result of his conviction in Cause FD-408. The trial court also revoked Johnson's probation in Cause FD-528 and ordered execution of Johnson's previously-suspended sentence of two and one-half years. Johnson now appeals.

## I. Batson Challenge

Johnson claims that the trial court erred in overruling his Batson challenge to the State's use of a peremptory strike to remove an African-American juror from the venire. Our supreme court recently explained that "[p]urposeful racial discrimination in selection of the venire violates a defendant's right to equal protection because it denies him the protection that a trial by jury is intended to secure." Addison v. State, 962 N.E.2d 1202, 1208 (Ind. 2012) (citing Batson v. Kentucky, 476 U.S. 79, 86 (1986)). The exclusion of even a single prospective juror based on race, ethnicity, or gender violates the Fourteenth Amendment's Equal Protection Clause. Id. (citing Snyder v. Louisiana, 552 U.S. 472, 478 (2008)). "[P]ursuant to Batson and its progeny, a trial court must engage in a three-step process in evaluating a claim that a peremptory strike was based on race. Cartwright v. State, 962 N.E.2d 1217, 1220 (Ind. 2012).

First, "'a defendant must make a prima facie showing that a peremptory challenge has been exercised on the basis of race[.]'" Id. (quoting Snyder, 552 U.S. at 476-77). Using a peremptory strike to remove some African-American jurors does not, by itself, raise an inference of racial discrimination. Addison, 962 N.E.2d at 1209 (citing Kent v. State, 675 N.E.2d 332, 340 (Ind. 1996)). But the removal of the only African-American juror on the venire panel does raise an inference that the juror was excluded on the basis of race. Id. (citing McCormick v. State, 803 N.E.2d 1108, 1111 (Ind. 2004); McCants v. State, 686 N.E.2d 1281, 1284 (Ind. 1997)).

Here, Johnson objected when the State used a peremptory strike to remove Juror No. 13, an African-American male. As noted by the State, another African-American remained on the panel of potential jurors. In fact, the other African-American was eventually selected as the alternate juror. Under these facts and circumstances, we cannot say that Johnson met his burden of making a prima facie showing that the peremptory challenge was based on the race of Juror No. 13. See Addison, 962 N.E.2d at 1209.

It has been held, however, that "once the [State] 'has offered a race-neutral explanation for the peremptory challenges and the trial court has ruled on the ultimate question of intentional discrimination, the preliminary issue of whether the [defendant] had made a prima facie showing becomes moot." Jeter v. State, 888 N.E.2d 1257, 1264 (Ind. 2008) (quoting Hernandez v. New York, 500 U.S. 352, 359 (1991)). We therefore proceed to the second step of the Batson analysis. See Jeter, 888 N.E.2d at 1264.

In the second step of the Batson analysis, once the defendant has made a prima facie showing, the prosecution must offer a "race-neutral basis for striking the juror in

question[.]" Addison, 962 N.E.2d at 1209 (citing Snyder, 552 U.S. at 476-77). An explanation is considered race-neutral if, on its face, it is based on something other than race. Id. (citing Forrest v. State, 757 N.E.2d 1003, 1004 (Ind. 2001)). "'Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral.'" Id. (quoting Purkett v. Elem, 514 U.S. 765, 768 (1995) (per curiam)). And although the race-neutral reason must be more than a mere denial of improper motive, the reason need not be particularly persuasive, or even plausible. Id.

Here, the State offered the race-neutral reason that Juror No. 13 had indicated that he had been awake for a long period of time due to his third-shift job and would therefore find it hard to focus on the trial.[2] This is well supported by the record. Juror No. 13 indicated that he had awakened on the evening before trial, went to work at 10:00 p.m. and remained there until 6:00 a.m. He then reported for jury duty at 10:00 a.m. that same day. Juror No. 13 explained that he usually sleeps after he returns home from work in the morning until 2:00 p.m. or 3:00 p.m. When the trial court asked Juror No. 13 if he would be too tired to be able to serve on the jury, the juror responded that he would be too tired. He also indicated that he had to work at 10:00 p.m. that night as well. Thus, serving on the jury had the potential to make him stay awake for almost two days straight. When questioned by Johnson's counsel, Juror No. 13 stated that he would be tired but believed

---

[2] The prosecuting attorney also proffered the race-neutral reason that Juror No. 13 had stated during voir dire that none of his family members had been charged with a crime, whereas the prosecuting attorney had "information that both his mother and father had been charged with crimes[.]" Tr. p. 62. When pressed by the trial court as to how the prosecuting attorney knew that the individuals charged with the crimes were in fact Juror No. 13's parents, the prosecuting attorney admitted that he was "not a hundred percent sure, but that's the information that I received." Id. at 62-63. The trial court then expressly based its ruling on the Batson challenge on Juror No. 13's work schedule. Id. at 64. We therefore consider only this proffered race-neutral reason in our analysis.

that he could be attentive.  But he also admitted that he had never stayed awake for a full day after working third shift.  It is therefore clear that the State proffered a race-neutral reason for using its peremptory strike to remove Juror No. 13.

The last part of the Batson analysis is for the trial court to determine, in light of the parties' submissions, whether the defendant has shown purposeful discrimination. Addison, 962 N.E.2d at 1209.  "Although the burden of persuasion on a Batson challenge rests with the party opposing the strike, the third step—determination of discrimination— is the 'duty' of the trial judge."  Id. (citing Miller–El, 545 U.S. at 239; Jeter, 888 N.E.2d at 1264-65).  It is for the trial court to evaluate the persuasiveness of the proffered race-neutral justification at the third step of the analysis.  Id.  "It is then that 'implausible or fantastic justifications may (and probably will) be found to be pretexts for purposeful discrimination.'"  Cartwright, 962 N.E.2d at 1221 (quoting Purkett, 514 U.S. at 768).  At this final step, the defendant may offer additional evidence to demonstrate that the proffered justification was pretextual.  Id.  Upon appellate review of the trial court's decision, we give great deference to the trial court's decision concerning whether a peremptory challenge is discriminatory, and the trial court's decision will be set aside only if it is clearly erroneous.  Id. (citing Forrest, 757 N.E.2d at 1004; Miller–El v. Cockrell, 537 U.S. 322, 340 (2003)).

Here, the trial court's finding of no purposeful racial discrimination was not clearly erroneous.  As explained above, Juror No. 13 admitted that he had been awake for a long period of time and therefore would find it hard to concentrate on the trial.  He also

9

admitted that he had never been awake for such a long period of time after having worked the night before.

In this sense, the present case is similar to that before our supreme court in Forrest, where the State used a peremptory strike to remove the only African-American on the jury panel. When the defendant made a Batson objection, the State noted that the juror in question had laughed at jokes made by defense counsel and also indicated that she had gotten only forty-five minutes' sleep the night before. Even though the juror indicated that she should be able to serve as juror despite her lack of sleep, the trial court overruled the defendant's Batson challenge. Forrest, 757 N.E.2d at 1005. On appeal, our supreme court affirmed the trial court's ruling, concluding that, based on the juror's lack of sleep, the trial court did not clearly err in determining that the State's use of the peremptory challenge was not discriminatory. Id.

Moreover, there is no indication in the case before us that the State's race-neutral explanation was merely a pretext. The State made a successful for-cause challenge to Juror No. 7, a non-African-American, who also indicated that he had little sleep the night before. See Tr. p. 57-59. In fact, the State first made a challenge for cause to remove Juror No. 13 for the same reason, which the trial court denied. See Cartwright, 962 N.E.2d at 1223 (affirming trial court's determination that defendant failed to prove purposeful racial discrimination in use of peremptory strike to remove African-American from jury panel where non-African-Americans with issues similar to that of stricken African-American were dismissed from the jury for cause and by use of peremptory strikes). Cf. Addison, 962 N.E.2d at 1215 (reversing trial court's ruling that State's use

10

of peremptory strike to remove African-American from jury panel where non-African American jurors gave "strikingly similar" answers to the answers given by the stricken juror that formed the State's proffered "race-neutral" reason for striking the juror).

Nor does it appear here that the State used its peremptory challenges in a pattern to remove other African-Americans from the jury panel. See Boney v. State, 880 N.E.2d 279, 288 (Ind. Ct. App. 2008) (citing Batson, 476 U.S. at 96-97) (noting that a pattern of strikes against minority jurors in a venire can give rise to an inference of discrimination). Although there were apparently only two African-Americans on the venire, the State did not use a peremptory strike to remove the other African-American from the panel, and this juror was ultimately chosen to serve as the alternate juror.[3] Tr. p. 71.

Under these facts and circumstances, the trial court did not clearly err in determining that Johnson failed to meet his burden of proving purposeful racial discrimination in the State's use of a peremptory strike to remove one of two African-American jurors from the jury panel.

## II. Sufficiency of the Evidence

Johnson next claims that the State failed to present evidence sufficient to support his conviction for Class D felony battery on a law enforcement officer resulting in bodily injury. In reviewing Johnson's claim, we respect the exclusive province of the trier of fact to weigh any conflicting evidence. McHenry v. State, 820 N.E.2d 124, 126 (Ind. 2005). Thus, we will neither reweigh the evidence nor judge the credibility of witnesses.

---

[3] We reject Johnson's contention that the trial court believed that the Batson analysis was inapplicable simply because there was another African-American on the jury panel.

Id. We consider only the probative evidence and reasonable inferences supporting the verdict, and we will affirm if the probative evidence and reasonable inferences drawn from the evidence could have allowed a reasonable trier of fact to find the defendant guilty beyond a reasonable doubt. Id.

To convict Johnson of Class D felony battery, the State was required to prove that he knowingly or intentionally touched Officer Robert in a rude, insolent, or angry manner and that this resulted in bodily injury to Officer Robert, a law enforcement officer. See Ind. Code § 35-42-2-1(a)(2)(A); see also Appellant's App. p. 86. On appeal, Johnson does not deny that Officer Robert was a law enforcement officer. See Appellant's Br. at 11 ("Officer Theodore Robert was a South Bend police officer on May 24, 2011 [and] was working for the South Bend Housing Authority at the time he heard a dispatch request to the South Bend Apartments."). Instead, he claims that Officer Robert's account of what happened was inconsistent with the testimony of other witnesses and was "incredibly dubious."

Application of the "incredible dubiosity" rule is limited to those situations where a sole witness presents inherently contradictory testimony, which is equivocal or the result of coercion, and there is a complete lack of circumstantial evidence of the defendant's guilt. Baumgartner v. State, 891 N.E.2d 1131, 1138 (Ind. Ct. App. 2008) (citing Majors v. State, 748 N.E.2d 365, 367 (Ind. 2001)). We will overturn a conviction based upon the incredible dubiosity rule only when the testimony is so incredibly dubious or inherently improbable that it runs counter to human experience, and no reasonable person could believe it. Id. (citing Kien v. State, 782 N.E.2d 398, 407 (Ind. Ct. App. 2003)).

Inconsistencies in the testimony of witnesses go to the weight of the evidence and credibility of each individual witnesses' testimony, and such inconsistencies do not make the evidence "incredible" as a matter of law. Stephenson v. State, 742 N.E.2d 463, 497 (Ind. 2001).

Simply put, there is nothing about Officer Robert's testimony which is so incredibly dubious or inherently improbable that it runs counter to human experience with the result that no reasonable person could believe it. Officer Robert testified that Johnson jumped on his back when the officer attempted to place Johnson's brother in handcuffs. Officer Robert also testified that Johnson was one of four individuals who attacked Officer Robert and struck him with their fists. As a result of the fight, Officer Robert sustained injuries to his palm and right arm. From this testimony, the jury could reasonably conclude that Johnson touched Officer Robert, a law enforcement officer, in a rude insolent, or angry manner, and that this touching resulted in bodily injury to Officer Robert. See Ind. Code § 35-41-1-4 (2004) (defining "bodily injury" as "any impairment of physical condition, including physical pain.").[4] Johnson's argument to the contrary is simply a request that we believe his testimony instead of Officer Robert's testimony, which is precluded by our standard of review.

### III. Probation Violation

Johnson next claims that the evidence was insufficient to support the trial court's conclusion that Johnson violated the terms of his probation in Cause FD-528 by

---

[4] Effective July 1, 2012, this definition is now located at Indiana Code section 35-31.5-2-29. See P.L.114-2012 § 67.

committing another criminal offense. A probation revocation hearing is in the nature of a civil proceeding, and the alleged violation therefore need be proven only by a preponderance of the evidence. Mateyko v. State, 901 N.E.2d 554, 558 (Ind. Ct. App. 2009), trans. denied. On appeal, we consider only the evidence most favorable to the judgment, and we will neither reweigh the evidence nor judge the credibility of the witnesses. Id. We will affirm the trial court's judgment so long as substantial evidence of probative value exists to support the trial court's finding that a violation occurred, and the violation of a single condition of probation is sufficient to revoke probation. Wilkerson v. State, 918 N.E.2d 458, 461 (Ind. Ct. App. 2009).

As previously discussed, the State presented evidence sufficient to prove beyond a reasonable doubt that Johnson committed Class D felony battery on Officer Robert. It therefore follows that the State also presented evidence sufficient to establish by a preponderance of the evidence that Johnson violated the terms of his probation by committing this additional crime. See Braxton v. State, 651 N.E.2d 268, 270 (Ind. 1995) ("it is always a condition of probation that a probationer not commit an additional crime.") (citing Ind. Code § 35-38-2-1(a)).

### IV. Lesser-Included Offense Instruction

Johnson lastly claims that the trial court erred in refusing to give the jury his proffered instruction on the lesser-included offense of Class A misdemeanor battery. The manner of instructing the jury lies within the discretion of the trial court, and we will reverse the trial court only upon an abuse of that discretion. Smith v. State, 777 N.E.2d

32, 34 (Ind. Ct. App. 2002). An abuse of discretion occurs if the instructions, considered as a whole and in reference to each other, mislead the jury as to the applicable law.

In Webb v. State, our supreme court explained the three-part test that trial courts should perform when called upon by a party to instruct the jury on a lesser-included offense of the charged crime:

> First, the trial court must compare the statute defining the crime charged with the statute defining the alleged lesser included offense to determine if the alleged lesser included offense is inherently included in the crime charged. Second, if a trial court determines that an alleged lesser included offense is not inherently included in the crime charged under step one, then it must determine if the alleged lesser included offense is factually included in the crime charged. If the alleged lesser included offense is neither inherently nor factually included in the crime charged, the trial court should not give an instruction on the alleged lesser included offense. Third, if a trial court has determined that an alleged lesser included offense is either inherently or factually included in the crime charged, it must look at the evidence presented in the case by both parties to determine if there is a serious evidentiary dispute about the element or elements distinguishing the greater from the lesser offense and if, in view of this dispute, a jury could conclude that the lesser offense was committed but not the greater. It is reversible error for a trial court not to give an instruction, when requested, on the inherently or factually included lesser offense if there is such an evidentiary dispute.

963 N.E.2d 1103, 1106 (Ind. 2012) (citing Wright v. State 658 N.E.2d 563 (Ind. 1995)) (citations and internal quotations omitted).

Johnson's proffered instruction read in pertinent part:

The crime of battery is defined by statute as follows:

A person who knowingly or intentionally touches another person in a rude, insolent or angry manner which:

Results in bodily injury to any other person
Or

15

Is committed against a law enforcement officer or against a person summoned and directed by the officer while the officer is engaged in the execution of his official duty

Commits battery, a Class A misdemeanor.

Before you may convict the Defendant, the State must prove each of the following beyond a reasonable doubt:
1. The Defendant
2. Knowingly or intentionally
3. Touched Theodore Robert
4. In a rude, insolent or angry manner
5. Which resulted in bodily injury to Theodore Robert
6. Or was committed against Theodore Robert a law enforcement officer.

If the State failed to prove each of these elements beyond a reasonable doubt, you must find the Defendant not guilty of battery, a Class A misdemeanor. If the State did prove each and every element beyond a reasonable doubt, you may find the Defendant guilty of the lesser included offense of battery, a Class A misdemeanor.

Appellant's App. p. 61.

On appeal, the State admits that Class A misdemeanor battery is an inherently and factually included offense of the charged crime of Class D felony battery. The State also admits that Johnson's proffered instruction was a correct statement of the law.[5] The State focuses its argument on the third prong of the analysis, i.e. whether there was a serious evidentiary dispute about the element or elements distinguishing the greater from the lesser offense. On appeal, Johnson claims that "the only difference between the crime

---

[5] We note, however, that although this instruction generally tracks the statutory language of Indiana Code section 35-42-2-1(a)(1)(A) and (B), it is not entirely clear as to what is required to find the defendant guilty of Class A misdemeanor battery. The instruction states that the State *must* prove *each* of the elements, but it uses the disjunctive "or" at the beginning of element 6. The instruction further states that the jury must find Johnson not guilty if the State failed to prove each of these elements. It then repeats the requirement that the State prove "each and every element" in order to find Johnson guilty of the lesser included offense of Class A misdemeanor battery. The use of the disjunctive "or" at the beginning of the listed sixth element, along with instructing the jury that it must find "each and every" element listed in order to find Johnson guilty, had the potential to confuse the jury and make it think that it had to prove *all* six elements listed, which is incorrect.

16

charged and the lesser included offense is that the bodily injury is to a law enforcement officer." Appellant's Br. at 18.

As noted above, to convict Johnson of Class D felony battery, the State was required to prove that he knowingly or intentionally touched Officer Robert in a rude, insolent, or angry manner and that this resulted in bodily injury to Officer Robert, a law enforcement officer. See Ind. Code § 35-42-2-1(a)(2)(A); see also Appellant's App. p. 86. To convict Johnson of Class A misdemeanor battery, the State would have had to prove that he knowingly or intentionally touched Officer Robert in a rude insolent or angry manner and that this touching either "result[ed] in bodily injury to any other person" or was "committed against a law enforcement officer or against a person summoned and directed by the officer while the officer [wa]s engaged in the execution of the officer's official duty." In other words, to convict Johnson of Class A misdemeanor battery, the State had to prove that Johnson's battery resulted in bodily injury to any other person *or* that the battery was committed against a law enforcement officer, whereas to convict him of Class D felony battery, the State had to prove that Johnson's battery resulted in bodily injury *to* a law enforcement officer.

It is not entirely clear from Johnson's argument as to which element he claims there was a serious evidentiary dispute. But, as noted above, Johnson makes no cognizable claim that Officer Robert was not a law enforcement officer. We therefore understand Johnson's claim to be that there was a serious evidentiary dispute with regard to whether his battery resulted in serious bodily injury to Officer Robert.

The evidence at trial clearly demonstrated that Officer Robert suffered from injuries as a result of the fight with Johnson and his companions. Johnson elicited testimony from Officer Robert that he was unsure of which assailant caused which particular injury, but the jury was instructed on accomplice liability. Thus, which assailant caused which particular injury was not an issue at trial. See Wieland v. State, 736 N.E.2d 1198, 1202 (Ind. 2000) ("accomplice liability applies to the contemplated offense and all acts that are a probable and natural consequence of the concerted action."); Kendall v. State, 790 N.E.2d 122, 132 (Ind. Ct. App. 2003) (noting that an accomplice is liable for everything which follows incidentally in the execution of the common design, as one of its natural and probable consequences, even though it was not intended as a part of the original design or common plan), trans. denied. There was no serious evidentiary dispute that Officer Robert suffered bodily injury as a result of the fight with Johnson and his accomplices.

Moreover, Johnson's own testimony was that he was not involved in the fight at all and was instead inside one of the apartment units. If the jury believed Johnson's testimony, then it would have to have found him not guilty of any battery. Johnson never claimed that he did not cause bodily injury to Officer Robert. Because there was no serious evidentiary dispute about the elements distinguishing the greater from the lesser offense, we cannot say that the trial court abused its discretion in refusing to give Johnson's tendered instruction on Class A misdemeanor battery.

## Conclusion

The State presented evidence sufficient to support Johnson's conviction for Class D felony battery on a law enforcement officer resulting in bodily injury in Cause FD-408. This same evidence was also sufficient to support the trial court's conclusion that Johnson violated the terms of his probation in Cause FD-528 by committing this additional criminal offense. The trial court did not clearly err in overruling Johnson's Batson challenge to the State's use of a peremptory strike to remove an African-American member of the jury panel, and the trial court did not abuse its discretion in refusing Johnson's proffered instruction on the lesser-included offense of Class A misdemeanor battery.

Affirmed.

VAIDIK, J., and BARNES, J., concur.