ATTORNEY FOR APPELLANT
Matthew J. McGovern
Evansville, Indiana

ATTORNEYS FOR APPELLEE
Gregory F. Zoeller
Attorney General of Indiana

Gary R. Rom
Deputy Attorney General
Indianapolis, Indiana



FILED
Feb 22 2012, 11:12 am

CLERK
of the supreme court,
court of appeals and
tax court

## In the
## Indiana Supreme Court

No. 82S01-1109-CR-564

JERRME CARTWRIGHT,

*Appellant (Defendant below),*

v.

STATE OF INDIANA,

*Appellee (Plaintiff below).*

Appeal from the Vanderburgh Circuit Court, No. 82C01-0812-FA-1396
The Honorable Carl A. Heldt, Judge
The Honorable Kelli E. Fink, Magistrate

On Petition To Transfer from the Indiana Court of Appeals, No. 82A01-1005-CR-214

**February 22, 2012**

**Rucker, Justice.**

Jerrme Cartwright was convicted of attempted battery and unlawful possession of a firearm by a serious violent felon. In a divided opinion, the Court of Appeals reversed and remanded for new trial. We granted transfer and now affirm the judgment of the trial court.

**Facts and Procedural History**

On the night of December 27, 2008, Jerrme Cartwright ("Cartwright") was involved in a fight at the American Legion in Evansville (the "Legion"). The fight apparently resulted in injury to Legion patrons Tiffany Boyd ("Tiffany") and Jamar Boyd ("Jamar"). After the fight, Tiffany and Jamar drove to the nearby home of Linda Beattie ("Linda") and parked outside. Linda and her sister Shaudarekkia Bailey ("Shaudarekkia"), who had been present at the Legion during the fight, also left and drove to Linda's house. Tiffany was outside her vehicle and Shaudarekkia was inside her vehicle in front of Linda's house when Cartwright approached, holding a gun. Cartwright pointed the gun in the direction of Tiffany and began shooting, fired into the crowd that had gathered, and then pointed the gun and shot at Shaudarekkia. Police then drove down the street, observed Cartwright firing into the crowd, and ordered him to drop his weapon. Cartwright then fired at the two officers. Cartwright fled toward a local community center but was later apprehended. A shirt containing DNA consistent with that of Cartwright, as well as the gun which had fired the earlier shots, were subsequently found near the community center.

The State charged Cartwright with four counts of Class A felony attempted murder, two counts of Class B felony unlawful possession of a firearm by a serious violent felon, two counts of Class B felony robbery, one count of Class A felony burglary, two counts of Class B felony criminal confinement, one count of Class C felony battery, one count of Class D felony pointing a firearm, and one count of Class D felony auto theft.

During jury selection, several members of the venire were stricken for cause and peremptorily. Notably for our purposes, the State peremptorily struck the sole African American venireperson, Ronald Bard. Cartwright immediately objected, asserting that the strike violated his equal protection rights as elucidated in Batson v. Kentucky, 476 U.S. 79, 86 (1986). The trial court allowed Cartwright to make extensive argument in support of his Batson claim and

2

permitted the State to provide justification for the strike of Bard. Tr. at 143-50. The court declined to find a prima facie case of discrimination but stated that the State provided "race neutral reasons on the record, and for that reason I deny your Batson challenge." Tr. at 151.

At a trial on only the attempted murder and unlawful possession of a firearm counts, which had been bifurcated from the other charges for trial, a jury found Cartwright guilty of two counts of Class C felony attempted battery with a deadly weapon and two counts of Class B felony attempted aggravated battery, all lesser included offenses of attempted murder. Cartwright was also convicted of Class B felony unlawful possession of a firearm by a serious violent felon. The trial court sentenced Cartwright to an aggregate term of twenty-six years.

Cartwright appealed, raising two issues: (1) whether the trial court improperly denied his Batson challenge to the State's peremptory strike of the sole African American prospective juror, and (2) whether there was sufficient evidence to support his convictions for attempted battery with a deadly weapon. In a divided opinion, the Court of Appeals reversed. Cartwright v. State, 950 N.E.2d 807 (Ind. Ct. App. 2011). The majority held that the State's proffered explanations for its peremptory strike were pretextual resulting in purposeful discrimination in the selection of the jury, in violation of the Equal Protection Clause of the United States Constitution as explained in Batson. Judge Vaidik dissented, concluding that the State's justifications for the strike were supported by the record and that the trial court had not erred in allowing the strike. Cartwright, 950 N.E.2d at 816 (Vaidik, J., dissenting). The panel agreed that there was sufficient evidence to support the attempted battery convictions. The State sought and we granted transfer, thereby vacating the Court of Appeals' opinion, see Ind. Appellate Rule 58(A). We now affirm the judgment of the trial court with respect to Cartwright's Batson claim. We summarily affirm that portion of the Court of Appeals opinion concerning Cartwright's sufficiency claim. Additional facts will be provided below as necessary.

**Standard of Review**

As we note today in Addison v. State, "Purposeful racial discrimination in selection of the venire violates a defendant's right to equal protection because it denies him the protection that a trial by jury is intended to secure. The exclusion of even a sole prospective juror based on

race, ethnicity, or gender violates the Fourteenth Amendment's Equal Protection Clause." No. 49S05-1105-CR-267 (Ind. Feb. 22, 2012), slip op. at 6 (citing Batson v. Kentucky, 476 U.S. 79, 86 (1986); Snyder v. Louisiana, 552 U.S. 472, 478 (2008)) (internal quotation marks omitted).

Pursuant to Batson and its progeny, a trial court must engage in a three-step process in evaluating a claim that a peremptory challenge was based on race. "First, a defendant must make a prima facie showing that a peremptory challenge has been excercised on the basis of race; second, if that showing has been made, the prosecution must offer a race-neutral basis for striking the juror in question; and third, in light of the parties' submissions, the trial court must determine whether the defendant has shown purposeful discrimination." Snyder, 552 U.S. at 476-77 (quoting Miller-El v. Dretke, 545 U.S. 231, 277 (2005)). Accord Jeter v. State, 888 N.E.2d 1257, 1263 (Ind. 2008). A step two explanation is considered race-neutral if, on its face, it is based on something other than race. Forrest v. State, 757 N.E.2d 1003, 1004 (Ind. 2001) (citing Hernandez v. New York, 500 U.S. 352, 360 (1991) (plurality opinion)). Although the burden of persuasion on a Batson challenge rests with the party opposing the strike, Jeter, 888 N.E.2d at 1264-65, the third step – determination of discrimination – is the "duty" of the trial judge. See Miller-El, 545 U.S. at 239; Jeter, 888 N.E.2d at 1264. The trial court evaluates the persuasiveness of the step two justification at the third step. It is then that "implausible or fantastic justifications may (and probably will) be found to be pretexts for purposeful discrimination." Purkett v. Elem, 514 U.S. 765, 768 (1995) (per curiam). Also, at the third stage, the defendant may offer additional evidence to demonstrate that the proffered justification was pretextual.

"Upon appellate review, a trial court's decision concerning whether a peremptory challenge is discriminatory is given great deference, and will be set aside only if found to be clearly erroneous." Forrest, 757 N.E.2d at 1004. Accord Miller-El v. Cockrell, 537 U.S. 322, 340 (2003) ("'[T]he trial court's decision on the ultimate question of discriminatory intent represents a finding of fact of the sort accorded great deference on appeal' and will not be overturned unless clearly erroneous." (quoting Hernandez, 500 U.S. at 364)). And under certain circumstances, which are not present here, we may review a Batson claim under the more rigorous standard of fundamental error. See, e.g., Addison, slip op. at 12.

4

**Discussion**

In this case the State offered, concurrently with its strike of venireperson Bard, reasons for the strike:

> For the record I put a preempt on Bard for the reasons that he has indicated that he does not wish to serve. He has health issues. He says he has trouble listening, and he mentioned on his prior convictions that a family member had been convicted of conversion, and his potential knowledge of witnesses.

Tr. at 140. Cartwright then stated "Well, I object under Batson. . . . [f]or the record, Mr. Bard is the only black man in the jury box, an[d] the entire venire." Tr. at 140. The trial court then stated:

> All right, and for purposes of the record under Batson [v.] Kentucky, the Court does not find a prima fa[cie] case of discrimination at this time, but despite that, the State has given their . . . reasons . . . . so I don't find a pattern at this time. However, the State has on record indicated what their reasons are.

Tr. at 141. Then, after a discussion with the court reporter as to whether she was able to hear and record the Batson exchange that took place at the bench, the trial court excused the jurors from the courtroom and held a separate Batson hearing on the strike of venireperson Bard. See Tr. at 143. During the hearing, Cartwright argued that under Batson he "is allowed to have Mr. Bard as a juror in this case. . . . [because] he is the only black man in the venire, and [Cartwright] is a black man." Tr. at 144. This was the extent of Cartwright's Batson argument before the trial court.[1] The State again gave its race-neutral reasons, the only difference being that it did not reiterate the reason related to Bard's potential knowledge of witnesses. See Tr. at 149-50. The trial court then declined to find a prima facie case of discrimination, but noted that "the State wanted to give their race neutral reasons anyway, they have made those race neutral reasons on the record, and for that reason I deny your Batson challenge." Tr. at 151.

The trial court incorrectly found no prima facie case of discrimination under the circumstances present here. Our cases are clear that "the removal of 'the only . . . African

---

[1] Cartwright further argued that the exclusion of Bard violated his right to have a fair cross section of the community represented in the venire. Tr. at 144-46. Cartwright did not raise this claim on appeal.

American juror that could have served on the petit jury'" is sufficient to establish a prima facie case under Batson. Addison, slip op. at 6 (quoting McCormick v. State, 803 N.E.2d 1108, 1111 (Ind. 2004)). But as the Court of Appeals correctly observed, "where, as here, a prosecutor has offered a race-neutral explanation for the peremptory challenge and the trial court has ruled on the ultimate question of intentional discrimination, the preliminary issue of whether the defendant had made a *prima facie* showing of purposeful discrimination becomes moot." Cartwright, 950 N.E.2d at 811. Accord Hernandez, 500 U.S. at 359 (recognizing that in the Batson context, "where the defendant has done everything that would be required of him if the plaintiff had properly made out a prima facie case, whether the plaintiff really did so is no longer relevant" (quoting U.S. Postal Serv. Bd. of Governors v. Aikens, 460 U.S. 711, 715 (1983) (brackets omitted)).

On transfer Cartwright argues that the United States Supreme Court decision in Snyder mandates the conclusion that the strike of Bard was racially motivated. Cartwright declares that Snyder "held that under the third step of Batson, the trial court must thoroughly analyze the State's proffered reasons for striking an African-American juror from the jury panel." Def.'s Resp. to Trans. at 7. Cartwright urges that Snyder requires a trial court to explicitly state its reasons for deciding a Batson challenge. We do not read Snyder so expansively. Although Snyder recognized that the trial court ultimately must make the determination of discrimination, and the Court in Snyder noted that there, the trial court did not provide reasons for its Batson ruling, Snyder did not declare that trial courts must do so. Indeed in a recent post-Snyder opinion, at least one federal circuit has declared "federal law has never required explicit fact-findings following a Batson challenge, especially where a prima facie case is acknowledged and the prosecution presents specific nondiscriminatory reasons on the record." Stenhouse v. Hobbs, 631 F.3d 888, 893 (8th Cir. 2011) (quoting Smulls v. Roper, 535 F.3d 853, 860 (8th Cir. 2008) (en banc)).

In Snyder, the prosecution offered two reasons for its strike of African American venireperson Brooks: (1) that he "looked very nervous" and (2) that he stated he was concerned about taking time away from his student teaching obligation to sit on the jury. Snyder, 552 U.S. at 478. The Supreme Court noted that the trial court judge had included no express finding as to Brooks' demeanor – i.e., his nervousness – in the record. And because demeanor cannot be

shown from a "cold record" without a specific finding by the trial court, the Court refused to credit the prosecutor's demeanor-based reason for striking Brooks. Id. at 479.

The Court then examined the record for evidence supporting the strike of Brooks based on his concern about missing his student teaching obligation, a requirement for his degree. In essence, the Court found that Brooks had been rehabilitated on this issue because Brooks' purported concern appeared to have dissipated after the trial court spoke with his dean and assured him that the jury service would not pose a problem. See id. at 482-83. The Court further compared Brooks to similarly situated seated jurors and found that the State had accepted at least two white jurors who had expressed similar concerns about having conflicting obligations. Id. at 483-84. In light of this, and because there was nothing in the record showing that the trial judge credited the nervousness justification, the Court concluded that the defendant's Batson challenge should have succeeded.

By contrast, in this case all of the State's proffered reasons for the strike of Bard were race-neutral, and none were demeanor-based. After examining the record, as did the Supreme Court in Snyder, we find no evidence of pretext in the State's strike of venireperson Bard. Bard volunteered on voir dire examination that he did not wish to serve on the jury. Tr. at 126. He stated that he was taking a diuretic which caused him "a frequent problem of going to the restroom." Tr. at 127, 31. He also stated, "I'm not a good listener, but . . . but that's from all my life even school." Tr. at 127. And on his juror questionnaire, he responded "Yes conversion" to the question "Have you or any of your immediate family members been charged with or convicted of a crime." Appellant's Appendix at 118.[2] The prosecutor did not run afoul of Batson for striking Bard based on these statements. See, e.g., Lee v. State, 689 N.E.2d 435, 441 (Ind. 1997) (recognizing as race-neutral the fact that venireperson's brother had been convicted of a crime); Ross v. State, 665 N.E.2d 599, 602 (Ind. Ct. App. 1996) (agreeing that a venireperson's medical problems and need to urinate frequently were race-neutral reasons); Mitleider v. Hall, 391 F.3d 1039, 1049 (9th Cir. 2004) (finding prosecutor's perception that venireperson did not want to serve on the jury was a race-neutral reason); United States v.

_____

[2] We are not presented with any juror questionnaires other than that of venireperson Bard. We therefore cannot determine whether any other venirepersons having criminal convictions in their immediate families were seated on the jury. The burden rests with Cartwright to demonstrate pretext.

Casper, 956 F.2d 416, 419 (3d Cir. 1992) (noting that hearing problems constitute a race-neutral reason). Moreover, it is clear from the record that non-African American venirepersons with problems similar to Bard's were also dismissed from the jury. See, e.g., Tr. at 45, 80-81, 89 (dismissing for cause a venireperson who stated he "would rather not serve" and whose medication caused him difficulty processing what he hears and sees); Tr. at 108, 121 (dismissing on State's peremptory challenge a venireperson who indicated she had problems with urinary frequency); Tr. at 127, 138, 139 (dismissing for cause a venireperson who stated she would rather not serve on the jury and whose anxiety disorder caused her problems "listening and processing information").

Cartwright seems to argue that because the State failed to follow-up on these issues with Bard, its reasons must be pretextual. See Def.'s Resp. to Trans. at 10-11. While it is true that failing to follow-up with a minority venireperson may be evidence of pretext where other similar non-minority venirepersons were seated, see Addison, slip op. at 18, Cartwright points us to no similar seated jurors, and we find none. Cartwright also argues that the State's reasons for striking Bard must be pretextual because Bard "never indicated that he would be unwilling to judge the case fairly and impartially." Def.'s Resp. to Trans. at 11. But Cartwright fails to explain why Bard's assumed ability to judge the case fairly and impartially renders the State's strike of him pretextual.

In sum, Cartwright essentially argues that the State failed to meet its burden to demonstrate its strike of Bard was not motivated by discriminatory purpose. But the State had no such burden under Batson. The State was only required to come forth with race-neutral reasons for striking Bard, and it did so. It was Cartwright's burden to demonstrate that those reasons were pretextual. He has not carried his burden.

### Conclusion

The judgment of the trial court is affirmed.

Shepard, C.J., and Dickson, Sullivan and David, JJ., concur.

8