# FOR PUBLICATION

ATTORNEY FOR APPELLANT:

**DONALD E.C. LEICHT**
Kokomo, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**JODI KATHRYN STEIN**
Deputy Attorney General
Indianapolis, Indiana

**FILED**
Oct 02 2012, 9:29 am

*[signature]*
**CLERK**
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| WILLIE BIGSBEE, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 34A02-1201-CR-60 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE HOWARD SUPERIOR COURT
The Honorable William C. Menges, Jr., Judge
Cause No. 34D01-1104-FA-348

**October 2, 2012**

**OPINION - FOR PUBLICATION**

**BARTEAU, Senior Judge**

## STATEMENT OF THE CASE

Willie Bigsbee appeals his two convictions of dealing in cocaine, both as Class A felonies. Ind. Code § 35-48-4-1 (2006). We affirm.

## ISSUES

Bigsbee raises two issues, which we restate as:

I. Whether the trial court erred in overruling his objection under *Batson v. Kentucky*, 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986), to the State's peremptory strikes of two prospective jurors.

II. Whether the evidence is sufficient to sustain his convictions.

## FACTS AND PROCEDURAL HISTORY

In 2010, William Estep worked for Kokomo Police Detective Shane Melton as a confidential informant. On December 17, 2010, Estep contacted Bigsbee at Melton's request, and the two men met later that day. Next, on December 28, 2010, and January 6, 2011, Estep arranged cocaine purchases with Bigsbee by phone, went to Bigsbee's apartment, and exchanged cocaine for money while Melton monitored the phone calls and the transactions. The State arrested Bigsbee and charged him with three counts of dealing in cocaine as Class A felonies.

At trial, the parties questioned potential jurors. After the second round of questioning, the parties submitted peremptory strikes to the court. Bigsbee objected to the State's striking of two African-American panelists, citing *Batson*. The court noted that the objection would be addressed later, excused the stricken potential jurors, and continued with voir dire. Bigsbee moved for a mistrial, which the court denied. After the

2

jury had been selected and was released for the day, the court heard further argument on Bigsbee's *Batson* objection and overruled it.

The jury could not reach a verdict on the first count of dealing in cocaine, which addressed Estep's interaction with Bigsbee on December 17, 2010, but convicted Bigsbee on counts two and three, which were related to Estep's purchases of cocaine from Bigsbee on December 28, 2010, and January 6, 2011, respectively. The State dismissed count one, and the court sentenced Bigsbee on counts two and three. This appeal followed.

## DISCUSSION AND DECISION

## I. *BATSON* CHALLENGE

Bigsbee argues that the trial court erred by upholding the prosecutor's peremptory strikes of two African-American potential jurors because the strikes violated the holdings in *Batson* and its progeny. The State responds that the prosecutor's reasons for the peremptory strikes were race-neutral and did not contravene *Batson*.

The Supreme Court of the United States has determined that "[p]urposeful racial discrimination in selection of the venire violates a defendant's right to equal protection because it denies him the protection that a trial by jury is intended to secure." *Batson*, 106 S. Ct. at 1717. Subsequent cases have established that the exclusion of even a sole prospective juror based on race, ethnicity, or gender violates the Fourteenth Amendment's Equal Protection Clause. *Addison v. State*, 962 N.E.2d 1202, 1208 (Ind. 2012).

Under *Batson* and its progeny, a trial court must engage in a three-step process in evaluating a claim that a peremptory challenge was based on race. *Cartwright v. State*, 962 N.E.2d 1217, 1220 (Ind. 2012). First, a defendant must make a prima facie showing that a peremptory challenge was exercised on the basis of race; second, if that showing has been made, the prosecution must offer a race-neutral basis for striking the panelist in question; and third, in light of the parties' arguments, the court must determine whether the defendant has shown purposeful discrimination. *Id.* at 1220-21.

The prosecutor must present more than a mere denial of improper motive. *Highler v. State*, 854 N.E.2d 823, 827 (Ind. 2006). The prosecution's explanation is considered race-neutral if, on its face, it is based on something other than race. *Cartwright*, 962 N.E.2d at 1221. Although the ultimate burden of persuasion for a *Batson* challenge rests with the party opposing the strike, the third step is the duty of the trial judge. *Id.* Accordingly, a trial court's decision concerning whether a peremptory challenge is discriminatory is given deference on appellate review and will be set aside only if found to be clearly erroneous. *Id.*

Here, Bigsbee challenged the State's striking of an African-American man and an African-American woman from the venire panel. The trial court noted that the State had stricken two of four African-Americans from the panel and asked the State to justify its strikes. The State contended that the African-American man seemed to be confused and also seemed to be asleep at one point. The State also disapproved of the man's statement that he did not think there was a drug problem in the area. Next, the State asserted that it struck the African-American woman from the panel because of her age (eighteen) and

4

because she also did not agree that there was a drug problem in the area. Finally, the State noted that it had also stricken two Caucasian members of the panel due to their relatively young ages. These justifications are race-neutral and required the court to proceed to the third step and determine whether the defendant established purposeful discrimination. *See Highler*, 854 N.E.2d at 827-28 (determining that the prosecutor's explanation that he struck an African-American potential juror from the panel because he was a pastor and more apt to be forgiving was race-neutral). In response to the prosecutor's explanations, Bigsbee did not elaborate upon his claim of racial discrimination. Instead, he argued that age is also an impermissible basis for striking potential jurors.

In light of the State's explanations and Bigsbee's failure to support his claim of purposeful racial bias, we cannot conclude that the court clearly erred in overruling Bigsbee's *Batson* objection. *See Forrest v. State*, 757 N.E.2d 1003, 1005 (Ind. 2001) (determining that the trial court properly overruled Forrest's objection to the State's peremptory strike where the prosecutor stated that he struck the juror from the panel because she had received only forty-five minutes of rest that night and appeared during voir dire to favor the defense).

Next, Bigsbee argues that the constitutional protections set forth in *Batson* and its progeny should be extended to bar parties from using peremptory strikes to remove potential jurors on the basis of age. Our Supreme Court has explicitly held that "age is not an impermissible basis for using a peremptory challenge" and challenging a juror due to his or her young age does not violate the Equal Protection Clause of the United States

Constitution. *Price v. State*, 725 N.E.2d 82, 87 (Ind. 2000). Bigsbee acknowledges the holding in *Price* but argues that it should be reconsidered. We are not free to disregard our Supreme Court's precedent and must reject his argument.

Bigsbee further claims that the State's use of peremptory challenges to strike potential jurors on the basis of age violates article I, section 19 of the Indiana Constitution. However, Bigsbee did not argue that specific constitutional provision to the trial court, so we find his claim to be waived for appellate review. *See Orta v. State*, 940 N.E.2d 370, 377 (Ind. Ct. App. 2011) (determining that Orta's argument against a jury instruction was waived on appeal because it was not presented to the trial court), *trans. denied*.

In summary, we find no error in the trial court's overruling of Bigsbee's objection to the State's peremptory strikes.

## II. SUFFICIENCY OF THE EVIDENCE

Bigsbee argues that the evidence is insufficient to sustain his convictions because he contends that the State failed to prove that the controlled buys followed proper procedures. The State responds that sufficient evidence was presented to establish that Bigsbee sold cocaine to Estep on two occasions.

When an appellant challenges the sufficiency of the evidence supporting a conviction, we do not reweigh the evidence or judge the credibility of the witnesses. *Joslyn v. State*, 942 N.E.2d 809, 811 (Ind. 2011). We affirm if the probative evidence and reasonable inferences drawn from the evidence could have allowed a reasonable trier

of fact to find the defendant guilty beyond a reasonable doubt.[1]  *Id.*  In order to convict Bigsbee as charged of two counts of dealing in cocaine as Class A felonies, the State was required to prove beyond a reasonable doubt that:  (1) Bigsbee (2) knowingly or intentionally (3) delivered (4) cocaine or a narcotic drug (5) within 1000 feet of a family housing complex.  Ind. Code § 35-48-4-1.

Here, the evidence presented at trial establishes that Estep met Bigsbee in mid-2010.  Bigsbee gave Estep his telephone number and offered to sell cocaine to him.  On December 28, 2010, Estep called Bigsbee while working as a confidential informant.  As Melton listened in on the conversation, Estep and Bigsbee arranged a cocaine transaction. Bigsbee instructed Estep to come to his apartment for the deal.  Before Estep went to Bigsbee's residence, Melton and another officer searched Estep's person and car for contraband.  The officers did not find any contraband.  Next, Melton activated an audio/video surveillance device, which was disguised as a key fob, and gave it to Estep. Melton also gave Estep $100 for the purchase.  After these preparations, Estep drove to Bigsbee's residence, and Melton followed him.

Bigsbee leased an apartment from the Kokomo Housing Authority.  The apartment was located in a family housing project.  Estep parked outside Bigsbee's apartment. Melton parked nearby, where he could see the front of the apartment.  Estep went into Bigsbee's residence and gave him $100.  Another person arrived a few minutes later and

---

[1] Bigsbee asserts that because the evidence focuses on controlled buys, which he believes is a "judicially-defined" term, we should apply the standard of review for a determination of probable cause and consider uncontested evidence favorable to him.  Appellant's Br. pp. 10-11. We reject Bigsbee's assertion because we may not disregard our Supreme Court's well-established standard of review for appeals following a final judgment.

gave cocaine to Bigsbee, who put it on a table for Estep to pick up. Estep left the apartment with the cocaine and met the officers at a prearranged location. He handed the cocaine to Melton. Next, Melton and another officer searched Estep and his car and found no additional contraband. Melton took the surveillance device from Estep and turned it off. Later, Melton downloaded data from the surveillance device and captured an image of Bigsbee in his apartment and an image of the cocaine that Estep purchased. Melton also listened to the audio recording and recognized Bigsbee's voice.

On January 6, 2011, Estep called Bigsbee again, with Melton listening in on the conversation, and asked to purchase cocaine. Bigsbee told Estep to come to his apartment. Before Estep went to Bigsbee's residence, Melton and another officer searched Estep's person and car for contraband and found none. Next, Melton gave Estep $100. He also activated a surveillance device and gave it to Estep.

Estep subsequently drove to Bigsbee's apartment, and the officers followed him and parked nearby. Bigsbee met Estep at the door and gave him a baggie of cocaine in exchange for $100. After Estep left Bigsbee's apartment, he met the officers at a prearranged spot. He gave Melton the cocaine, and the officers searched his person and car for additional contraband. They found none. Melton took the surveillance device from Estep and turned it off. He later downloaded the data and captured an image of Estep reaching for a baggie of cocaine and an image of Bigsbee with money in his hand. Melton and Estep also listened to the audio recording and recognized Bigsbee's voice.

The evidence recounted above is sufficient to sustain both of Bigsbee's convictions for dealing in cocaine. *See Hale v. State*, 875 N.E.2d 438, 445 (Ind. Ct. App.

2007) (finding sufficient evidence to uphold a conviction for dealing in cocaine where the police searched informants prior to the buy, gave them buy money and a recording device, followed them to the buy, watched the house where the buy occurred, subsequently searched the informants at a prearranged location, and recovered cocaine), *trans. denied*. Bigsbee characterizes Melton's and Estep's descriptions of the transactions as "conclusory" and argues that the procedures for the controlled purchases were inadequate. Adequacy of control for a controlled buy goes to the weight and credibility of the evidence, which we will not reweigh. *Heyen v. State*, 936 N.E.2d 294, 302 (Ind. Ct. App. 2010), *trans. denied*.

<u>CONCLUSION</u>

For the reasons stated above, we affirm the judgment of the trial court.

Affirmed.

NAJAM, J., and MATHIAS, J., concur.

9