# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

May 25 2016, 6:53 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Ronald K. Smith
Public Defender
Muncie, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Monika Prekopa Talbot
Deputy Attorney General
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Jerome C. Lockhart,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff* | May 25, 2016<br><br>Court of Appeals Case No.<br>18A02-1507-CR-895<br><br>Appeal from the Delaware Circuit Court<br><br>The Honorable Marianne Vorhees, Judge<br><br>Trial Court Cause No.<br>18C01-1212-FB-25 |

**Baker, Judge.**

[1] Jerome Lockhart appeals his convictions for Rape, a Class B Felony,[1] and Sexual Misconduct, a Class B Felony.[2] He argues that the State improperly used a peremptory challenge on a Black jury candidate, and that the trial court made several evidentiary errors. Finding that the State had a race-neutral justification for its peremptory challenge and that the trial court made no evidentiary errors, we affirm.

## Facts[3]

[2] In August 2012, fourteen-year-old M.S. and her friend J.H. went to Lockhart's residence in Muncie. Lockhart was twenty-one years old at the time. M.S.'s parents had given her money to go bowling, but she gave it to Lockhart so that he could purchase alcohol. They joined a party taking place in Lockhart's apartment. At some point in the night, M.S. became very intoxicated and blacked out. She remembered that she went into the restroom and that Lockhart followed her in there. She also testified that she never consented to have sex with Lockhart.

---

[1] Ind. Code § 35-42-4-1.

[2] I.C. § 35-42-4-9.

[3] We held oral argument in this case in the Posey County Courthouse in Mount Vernon. We had the pleasure of following a moot court competition between the local high schools, created and hosted by Judge Redwine and Judge Almon, a tradition going back a number of years. The moot court jury consists of members of the local bar. We thank Judge Redwine, Judge Almon, and the Posey County Bar for their hospitality and continued efforts at legal education. And we thank counsel for their able and engaging oral advocacy.

[3] A short while later, Lockhart told J.H. that M.S. was in the bathroom. When J.H. went in there, she found M.S. unconscious with her pants down around her knees. J.H. pulled M.S.'s pants up and took her out to the living room.

[4] After M.S., who was still unconscious, was propped up in a chair in the living room, the party-goers decided that they would "ma[k]e a taco patty out of her," tr. p. 71—they threw soft taco shells, hot sauce, shaving gel, and dishwashing liquid at her, covering her unconscious body. At some point, M.S. was taken to Lockhart's bedroom, where J.H. undressed her and changed her into some of Lockhart's clothes.

[5] When M.S. did not come home by her midnight curfew, her mother became concerned. Her mother found out where M.S. had gone, and she drove over to Lockhart's house with her husband. She found her daughter unresponsive and unable to wake up. Her husband carried M.S. out of the house. M.S.'s mother believed that M.S. might have been raped, so the parents took her to the hospital.

[6] At the hospital, doctors found bruising on M.S.'s inner thighs. She felt abdominal pain. She underwent a rape kit examination, but was in so much pain that she could not tolerate the speculum examination. The examination revealed the presence of seminal material, and a later DNA analysis showed that the semen came from Lockhart.

After being read his *Miranda*[4] rights and signing a waiver of rights form, Lockhart spoke with Muncie Police investigators in a taped interview, which was played with some redactions for the jury. During the interview, Lockhart gave multiple versions of what had transpired. First, he said that he let M.S. into his apartment so that she could use the restroom, that he found her laying on the ground, and that he covered her with a blanket. He said that there "wasn't no sex . . . . Didn't kiss or, didn't hug her." Tr. p. 76. But after a few minutes, his story changed: "It was like, I didn't know she was the age she was, okay? She told [me] she was about to be seventeen." *Id.* at 90. He then conceded that he had sex with her, but said "I mean, it was like she was begging me." *Id.* He claimed that the intercourse was brief because he began feeling guilty about her age. "I didn't want to. It was like, she damn near forced me." *Id.* at 103.

On December 13, 2013, the State charged Lockhart with class B felony rape, class B felony sexual misconduct with a minor, and class A misdemeanor contributing to the delinquency of a minor. During the voir dire portion of the trial, the State used a peremptory challenge to strike a Black woman from the jury. She had indicated that she had prior experience with Muncie law enforcement and that she felt that the police had not been fair to her. Although she would have been the only Black person on the twelve-member jury, two alternate jury members were Black women. The trial court ruled in the State's

---

[4] *Miranda v. Arizona*, 384 U.S. 436 (1966).

favor, finding that the State had a race-neutral reason behind its peremptory challenge.

[9] After the April 13-14, 2015, trial, the jury found Lockhart guilty of rape and sexual misconduct with a minor, but not guilty of contributing to the delinquency of a minor. The trial court merged the latter conviction into the former, and sentenced Lockhart to ten years of incarceration. Lockhart now appeals.

## Discussion and Decision

## I. The Peremptory Challenge

[10] Lockhart's first argument is that his constitutional rights were violated when the State used a peremptory challenge on a Black juror. "Purposeful racial discrimination in selection of the venire violates a defendant's right to equal protection because it denies him the protection that a trial by jury is intended to secure." *Batson v. Kentucky*, 476 U.S. 79, 86 (1986). To determine whether a *Batson* violation has occurred, courts use a three-part test: first, the defendant must make a prima facie showing that the peremptory challenge was exercised on the basis of race; second, if such a showing is made, the State must offer a race-neutral basis for the challenge; third, the trial court must determine whether the defendant has shown purposeful discrimination. *Cartwright v. State*, 962 N.E.2d 1217, 1220-21 (Ind. 2012). The removal of the only prospective Black juror that could have served on a jury is sufficient to create an inference that racial discrimination has occurred. *McCants v. State*, 686 N.E.2d 1281,

1284 (Ind. 1997). On appeal, the trial court's decision is given great deference, and will be set aside only if clearly erroneous. *Cartwright*, 962 N.E.2d at 1221.

[11] The State argues that the prima facie showing has not been established; although this particular Black woman was struck from the jury, two other alternate jurors were Black and were not struck. However, the State has not cited to any case holding that the presence of Black alternate jurors is sufficient to defeat a *Batson* challenge,[5] and so we will assume that Lockhart has established the prima facie showing of racial discrimination.

[12] Even if we do so, Lockhart's argument is still unavailing; turning to the second part of the *Cartwright* test, we find that the State had a race-neutral justification for its peremptory challenge. This second step of a *Batson* challenge is satisfied if the State's explanation, on its face, is based on something other than race. *Forrest v. State*, 757 N.E.2d 1003, 1004 (Ind. 2001).

[13] We initially note that the voir dire procedure was not transcribed in this case. The parties subsequently went on the record before the trial judge and recreated the circumstances of the peremptory challenge. The parties' recollection was that this potential juror filled out a questionnaire in which she indicated that either she or one of her family members had been convicted of a criminal offense. The prosecutor informed the trial court that the potential juror had

---

[5] In *McCants*, our Supreme Court found that the defendant made the prima facie showing despite the presence of "two other prospective African-American jurors" because "they were among the last members of the jury venire and had little chance of serving on the jury." 686 N.E.2d at 1284 n.1.

been arrested and prosecuted for battery. Moreover, she indicated that she felt that the local police had treated her unfairly. The defense attorney, however, asked her whether she could fairly and impartially hear the case, and she indicated that she could. After hearing argument, the trial court ruled, "I do find that the State has proper . . . reasons that are race-neutral for exercising a peremptory challenge as to Juror #2, and I will allow the State to exercise a peremptory challenge on Juror 2." Tr. p. 10-11.

[14] Lockhart argues that "[t]he potential juror was asked several times whether or not she could hear this case fairly despite prior contacts with the law. She stated that she could. The State of Indiana adduced no evidence to show that the potential juror could not do that." Appellant's Br. p. 6. But the State did present such evidence; namely, that the potential juror felt that the local police did not treat her fairly. This is no small matter; the case involved testimony of several local police officers, and the potential juror's negative feelings toward the police could have affected how she saw the evidence. Lockhart is essentially requesting that this Court replace the trial court's judgment with our own; given our deferential standard of review, this is something we will not do.

## II. Admission of Evidence

## A. Confession/Saliva

[15] Lockhart argues that the trial court should have granted his motion to suppress his interview with police investigators and his motion to suppress his DNA sample. Although he concedes that he signed the waiver of rights form, he

argues that he did not make a knowing and intelligent waiver of his right to remain silent, as required by *Miranda v. Arizona*, 384 U.S. 436, 444 (1966). It is the State's burden to prove beyond a reasonable doubt that the confession was given voluntarily. *Jackson v. State*, 735 N.E.2d 1146, 1153-54 (Ind. 2000). At the suppression hearing, Lockhart presented the reports of two mental health professionals, who stated that he was below average intelligence, that he felt intimidated by the police, and that his fear made him reluctant to assert his rights.

[16] Because the admission or exclusion of evidence falls within the sound discretion of the trial court, we review the admission of evidence only for an abuse of discretion. *Wilson v. State*, 765 N.E.2d 1265, 1272 (Ind. 2002). Such an abuse of discretion occurs when the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court. *Id.* When deciding whether a confession was given voluntarily, courts look to the totality of the circumstances surrounding the waiver or confession. *Jackson*, 735 N.E.2d at 1153. On appeal, we will uphold the finding of the trial court if there is substantial evidence of probative value to support it. *Id.* at 1153-54.

[17] We find such evidence here. Even the two mental health care professionals, cited by Lockhart to establish his reluctance to assert his rights, concluded that Lockhart is capable of understanding the waiver of his right to remain silent. Lockhart was explained this right by the police and he expressly waived it. Tr. p. 64-65. Thus, there is substantial evidence supporting the trial court's conclusion that Lockhart made a voluntary waiver of his right to remain silent,

and the trial court did not err by admitting the confession into evidence. For the same reasons, the trial court did not err when it admitted the saliva sample that Lockhart volunteered.

## B. *Modessit* Argument

[18] Lockhart's third argument is that the State ran afoul of *Modessit v. State*, 578 N.E.2d 649 (Ind. 1991). In that case, the State called several witnesses to the stand prior to calling the victim, many of whom testified as to statements they heard the victim make. *Id.* at 651-52. Our Supreme Court was concerned that by the time the victim testified as to her own statements, there was a prejudicial "drumbeat" effect of repeating the same statements multiple times before the jury. *Id.*

[19] Lockhart argues that something similar happened in this case: the taped investigation included questions like, "did you ever hear her say stop, get off of me, at any time," or "would you be surprised if she said that [J.H.] is one of the people who heard her saying, 'Stop. Get off of me.'" Tr. p. 76-79. Lockhart argues that this created the same "drumbeat" effect mentioned by our Supreme Court.

[20] We disagree; in *Modessit*, our Supreme Court stressed its concern that the victim testified *after* the other witnesses who repeated her out-of-court statements: "Prior to putting the victim on the stand, the victim's veracity had been, in essence, vouchsafed by permitting the three witnesses to repeat the accusations of the victim." 578 N.E.2d at 651. In this case, the State called M.S. as the *first*

witness. Further, although the officer's question mentioned statements allegedly made by J.H., she was the *second* witness called in this case. Our Supreme Court explained "that truthfulness is safeguarded by having the declarant available for cross examination as to the out-of-court statements." *Id.* Both M.S. and J.H. were available for cross-examination before the taped investigation was played for the jury, and so the *Modessit* rationale does not apply to this case.

## C. *Crawford* Right to Cross-Examine

[21] Lockhart next argues that some of the questions used during the course of the taped investigation incorporated testimonial hearsay statements of people not called to testify at trial, and that this violated *Crawford v. Washington*, 541 U.S. 36 (2004). For example, the officers asked Lockhart why "Lavon," who was not called as a witness, asked Lockhart, "Did you have sex with my little sister?" Tr. p. 79. Lockhart argues that he had a constitutional right to confront whoever made this statement, or that if he could not confront the person, that the State should have redacted this question from its video.

[22] We find that these were not testimonial hearsay statements. "Hearsay" refers to "a statement that is not made by the declarant while testifying at the trial or hearing; and is offered in evidence to prove the truth of the matter asserted." Ind. Evidence Rule 801(c). In contrast, police questions and comments in an interview may be designed to elicit responses from the defendant and if so, are

not offered as proof of the facts asserted therein. *Strong v. State*, 538 N.E.2d 924, 928 (Ind. 1989).

[23] In this case, the trial court was aware that some of the officer's questions might be problematic, and suggested that Lockhart submit a jury instruction that would instruct the jury to only consider the police officer's statements as a method of questioning intended to elicit information from Lockhart and not as evidence of guilt. Tr. 59. Lockhart never submitted any such instruction. Insofar as the omission of this limiting instruction was error, it was invited error, which is not reversible. *Dumas v. State*, 803 N.E.2d 1113, 1121 (Ind. 2004).

## D. Evidence Rule 704(b)

[24] Lockhart next argues that several police statements included in the video violated Indiana Rule of Evidence 704(b), which states, "Witnesses may not testify to opinions concerning intent, guilt, or innocence in a criminal case; the truth or falsity of allegations; whether a witness has testified truthfully; or legal conclusions." During the interview, the officers questioning Lockhart pressed him by saying, "Well, wait a minute, you kinda have been lying. You have kind of been lying to us, okay?" Tr. p. 93.

[25] This argument fails for the same reason that Lockhart's *Crawford* argument fails; the police were clearly seeking to elicit a response from Lockhart, rather than testifying as to his truthfulness. The officers were giving Lockhart an opportunity to explain a potential inconsistency in his story. Once again, the

trial court recommended that Lockhart tender a jury instruction explaining that the officer's statements were being used to elicit a response, and once again Lockhart did not submit such an instruction.

## E. The Rape Shield Statute

[26] Finally, Lockhart argues that he should have been able to present evidence regarding the presence of unknown male DNA that was produced during the investigation. The trial court issued an order in limine excluding this evidence, ruling that it violated Indiana's Rape Shield Statute. Ind. Code § 35-37-4-4. Lockhart's counsel violated this order at trial by asking the expert witness a question regarding the unknown male DNA. Lockhart argues that he should have been allowed to inquire further as a matter of his right to cross-examine witnesses and provide a defense.

[27] Indiana Evidence Rule 412 provides as follows:

> (a) Prohibited Uses. The following evidence is not admissible in a civil or criminal proceeding involving alleged sexual misconduct:
>
> > (1) evidence offered to prove that a victim or witness engaged in other sexual behavior; or
> >
> > (2) evidence offered to prove a victim's or witness's sexual predisposition.
>
> (b) Exceptions.

(1) *Criminal Cases.* The court may admit the following evidence in a criminal case:

   (A) evidence of specific instances of a victim's or witness's sexual behavior, if offered to prove that someone other than the defendant was the source of semen, injury, or other physical evidence;

   (B) evidence of specific instances of a victim's or witness's sexual behavior with respect to the person accused of the sexual misconduct, if offered by the defendant to prove consent or if offered by the prosecutor; and

   (C) evidence whose exclusion would violate the defendant's constitutional rights.

In this case, the evidence that Lockhart seeks to admit is clearly "evidence of the victim's past sexual conduct." Evid. Rule 412(a)(1). The question becomes whether any exception applies.

The evidence that Lockhart seeks to admit is not "offered to prove that someone other than the defendant was the source of semen, injury, or other physical evidence." Evid. Rule 412(b)(1)(A). Lockhart admitted to having sexual intercourse with M.S. While the presence of other male DNA could be relevant to police investigators looking for an additional assailant, it has absolutely no bearing on whether Lockhart raped M.S., and therefore would not be probative of any issue in this case.

Lockhart's argument would be stronger if the State had used M.S.'s physical injuries to prove that Lockhart acted forcibly against her will. Then Lockhart might be able to posit that those injuries came from another source. But that was not the State's theory of the case; the State argued that M.S. was unconscious and incapable of providing consent. The jury found this fact to be proved beyond a reasonable doubt, and so whether someone else physically injured M.S. would, again, not be probative of any issue in Lockhart's case.

In sum, the State had a race-neutral justification for exercising its peremptory challenge, and the trial court did not make any of the evidentiary errors that Lockhart alleges.

The judgment of the trial court is affirmed.

Bailey, J., and May, J., concur.