## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

May 24 2017, 9:12 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

William T. Myers
Grant County Public Defender
Marion, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Monika Prekopa Talbot
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Mitchell Carroll,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

May 24, 2017

Court of Appeals Case No. 27A02-1606-CR-1536

Appeal from the Grant Superior Court

The Honorable Dana J. Kenworthy, Judge

Trial Court Cause No. 27D02-1507-F2-6

**Crone, Judge.**

## Statement of the Case

Following a jury trial, Mitchell Carroll was convicted of numerous felonies and misdemeanors. On appeal, he asserts that the trial court erred in denying his objection to the State's use of peremptory challenges to remove "the only two African-American" prospective jurors from the jury venire in violation of *Batson v. Kentucky*, 476 U.S. 79 (1986). Appellant's Br. at 7. Finding no *Batson* violation regarding prospective juror R.J., and concluding that Carroll has waived his claim regarding the alleged peremptory strike of a second African-American prospective juror, we affirm.

## Facts and Procedural History

The relevant facts most favorable to the verdicts indicate that prior to July 2015, Carroll and A.N. were in a romantic relationship and shared a residence. A.N. and her son, P.C., moved out of the residence at some point but returned on July 2, 2015, to retrieve P.C.'s video gaming system. When they arrived at the residence, Carroll exited the house "acting crazy" and yelling at A.N. Tr. at 557. He reached into her vehicle, turned off the ignition, and made her enter the house. P.C. ran away and called 911.

Neighbors heard a scream and a gunshot and witnessed Carroll carrying a gun while dragging A.N. by her hair. Carroll looked angry and A.N. looked scared. Three neighbors called 911. One of those neighbors then saw A.N. and Carroll in a car, with A.N. driving. That same night, A.N.'s mother called police to report that she believed her daughter had been kidnapped and that A.N. was

driving with Carroll in a silver Lexus. A.N.'s mother reported that Carroll was armed with a rifle and that he had wanted to take her as well but that she refused to go. A.N.'s mother reported that Carroll told her that he was going to kill both women.

[4] Police subsequently located A.N. driving a silver Lexus with Carroll "slumping down" in the passenger seat. *Id*. at 333-34. After an officer began following the Lexus in a marked police cruiser, Carroll pointed the rifle at the officer. The officer called for backup. A.N. subsequently stopped the vehicle and Carroll exited the vehicle with his hands in the air. A.N. stayed in the vehicle, and when officers approached her, she was crying, trembling, gasping, and saying, "He was going to kill me. He was going to kill me." *Id.* at 337. Officers found Carroll's rifle in the vehicle. Three shell casings found outside Carroll's residence, which appeared to have been recently fired, matched the rifle found in the vehicle.

[5] The State charged Carroll with fourteen criminal counts including level 2 felony kidnapping while hijacking a vehicle, level 2 felony criminal confinement while hijacking a vehicle, two counts of level 5 felony intimidation with a deadly weapon, level 5 felony battery by means of a deadly weapon, level 6 felony pointing a loaded firearm, level 6 felony criminal recklessness with a deadly weapon, class A misdemeanor domestic battery, class A misdemeanor theft, class A misdemeanor intimidation, and four counts of class A misdemeanor invasion of privacy. The trial court later dismissed the level 5 felony battery charge and the class A misdemeanor theft charge. Jury selection began on May

10, 2016, and trial on the twelve remaining counts was held on May 11, 2016. At the conclusion of the trial, the jury found Carroll guilty as charged. The trial court sentenced him to an aggregate sentence of thirty years. This appeal ensued.

## Discussion and Decision

[6] Carroll's sole contention on appeal is that the trial court erred in denying his *Batson* objection to the State's use of peremptory strikes to remove African-American prospective juror R.J., as well as a second African-American prospective juror, from the jury pool. "Purposeful racial discrimination in selection of the venire violates a defendant's right to equal protection because it denies him the protection that a trial by jury is intended to secure." *Batson*, 476 U.S. at 86. "The exclusion of even a sole prospective juror based on race, ethnicity, or gender violates the Fourteenth Amendment's Equal Protection Clause." *Addison v. State*, 962 N.E.2d 1202, 1208 (Ind. Ct. App. 2012).

[7] Our supreme court has explained that pursuant to *Batson* and its progeny, a defendant's claim that a peremptory challenge was based on race is evaluated using a three-step process:

> First, a defendant must make a prima facie showing that a peremptory challenge has been exercised on the basis of race; second, if that showing has been made, the prosecution must offer a race-neutral basis for striking the juror in question; and third, in light of the parties' submissions, the trial court must determine whether the defendant has shown purposeful discrimination. A step two explanation is considered race-neutral if, on its face, it is based on something other than race.

> Although the burden of persuasion on a *Batson* challenge rests with the party opposing the strike … the third step—determination of discrimination—is the duty of the trial judge. The trial court evaluates the persuasiveness of the step two justification at the third step. It is then that implausible or fantastic justifications may (and probably will) be found to be pretexts for purposeful discrimination. Also, at the third stage, the defendant may offer additional evidence to demonstrate that the proffered justification was pretextual.

*Cartwright v. State*, 962 N.E.2d 1217, 1220-21 (Ind. 2012) (citations and quotation marks omitted). "Upon appellate review, a trial court's decision concerning whether a peremptory challenge is discriminatory is given great deference, and will be set aside only if found to be clearly erroneous." *Id*. at 1221.

[8] Regarding prospective juror R.J., we will assume for the sake of argument that Carroll made a prima facie showing of discrimination based upon race. Accordingly, the burden shifted to the State to offer a race-neutral basis for striking R.J. We note that "[a] neutral explanation means 'an explanation based on something other than the race of the juror.'" *McCormick v. State,* 803 N.E.2d 1108, 1111 (Ind. 2004) (citation omitted). "Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral. Although the race-neutral reason must be more than a mere denial of improper motive, the reason need not be particularly 'persuasive, or even plausible.'" *Addison*, 962 N.E.2d at 1208-09 (citation omitted). The record indicates that in response to Carroll's *Batson* objection to the State's peremptory challenge of R.J., the State explained that it was striking R.J. based

upon her statement during voir dire that she was "psychic."[1] Tr. at 148. This was a race-neutral reason for the State's peremptory challenge of R.J.

[9]     As for the third step of the *Batson* analysis, the trial court found the State's race-neutral reason credible and persuasive. Indeed, the trial court echoed the State's concern that R.J. had stated that she was "psychic," and the trial court was similarly concerned with "the vibe" of her statement. *Id*. at 148-49. Carroll made no argument that the proffered race-neutral justification was pretextual. Under the circumstances, we cannot say that the trial court clearly erred in determining that the State's peremptory challenge of prospective juror R.J. was not discriminatory. Accordingly, the trial court did not err in denying Carroll's *Batson* objection to the removal of prospective juror R.J.

[10]    Regarding Carroll's claim that the trial court also erred in denying his objection to the State's alleged peremptory challenge of a second African-American prospective juror, he has provided us an inadequate record to review this claim. It has long been recognized that it is the appellant's burden to provide us an adequate record to permit meaningful appellate review. *Wilhoite v. State*, 7 N.E.3d 350, 354-55 (Ind. Ct. App. 2014). While the record does indicate that there may have been "two black jurors" in the venire and that Carroll

---

[1] Although much of the State's race-neutral explanation for its peremptory challenge of prospective juror R.J. was inaudible to the transcriber, the record clearly indicates, and Carroll concedes, that the State's peremptory challenge was based upon R.J.'s "psychic" statement. Specifically, during voir dire, when she was asked about the high evidentiary standard of reasonable doubt, R.J. stated that she was "like a very, kind of psychic person, so I can feel a lot of things. Not everything, but some things, so I would have to feel the peace within me and all the evidence also and the person." Tr. at 107.

challenged the State's removal of both R.J. and a second prospective African-American juror, *see* Tr. at 148, Carroll concedes that the voir dire transcript "is unclear, due to inaudible conversation, whether or not defense counsel or the prosecutor responded to the *Batson* challenge of the other African-American venireperson." Appellant's Br. at 10.

We note that if Carroll received what he believed to be an inadequate record of proceedings due to the inaudible portions of the transcript, Indiana Appellate Rule 31 provides, in part, that "[i]f no Transcript of all or part of the evidence is available, a party or the party's attorney may prepare a verified statement of the evidence from the best available sources, which may include the party's or the attorney's recollection." Carroll failed to do so.[2] Carroll has failed to meet his burden to present us with an adequate record for review and has therefore waived his *Batson* claim regarding the second African-American venireperson. *See Weekly v. State*, 496 N.E.2d 29, 31 (Ind. 1986) (defendant waived *Batson* challenge on appeal by failing to present adequate record). We affirm Carroll's convictions.

Affirmed.

Barnes, J., and Robb, J., concur.

---

[2] While it appears that a court reporter was, in fact, present during the proceedings here, as trial courts trend away from using live court reporter's, we note that the audibility of tape recorded proceedings and the resulting inadequacy of the transcripts is going to become an increasing problem. Parties and their trial attorneys must be cognizant of this fact and more often avail themselves of Appellate Rule 31.