## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Apr 09 2020, 9:56 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Tyler D. Helmond
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

F. Aaron Negangard
Chief Deputy Attorney General

Stephen Creason
Chief Counsel, Appeals

George P. Sherman
Supervising Deputy Attorney
General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Samuel E. Newbold, | April 9, 2020 |
| *Appellant-Defendant,* | Court of Appeals Case No. 19A-CR-2036 |
| v. | Appeal from the Vanderburgh Circuit Court |
| State of Indiana, | The Honorable Michael J. Cox, Magistrate |
| *Appellee-Plaintiff.* | Trial Court Cause No. 82C01-1902-F2-1199 |

**Mathias, Judge.**

[1] Samuel E. Newbold appeals his convictions following a jury trial in the Vanderburgh Circuit Court. Newbold contends that the trial court erred when it determined that he failed to demonstrate that the State's peremptory challenge to a venireperson was based on her race in violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. Finding no error, we affirm.

## Facts and Procedural History

[2] In February 2019, the Evansville Vanderburgh County Joint Task Force surveilled an Evansville residence for suspected narcotics activity. Law enforcement conducted traffic stops near the house and executed a search warrant of the house, which uncovered methamphetamine, paraphernalia, and firearms. Further investigation revealed that Newbold rented and lived in the house. The State ultimately charged Newbold with a number of drug offenses, a firearm offense, and alleged that he was an habitual offender.

[3] Newbold's two-day jury trial began on July 10, 2019. During voir dire, the prosecutor asked numerous prospective jurors, "if [the State] prove[s] our case beyond a reasonable doubt, if we firmly convince you of Mr. Newbold's guilt, would you return a finding of guilty?" Tr. Vol. II, p. 40. Juror Three, an African American man, replied "I don't know[.]" *Id.* Several jurors replied affirmatively before the prosecutor came to Juror Six, an African American woman. She also replied, "I don't know," but equivocated on a follow-up question. Then Juror Six was asked "Do you have reservations about this case? Is this the right role for you, is this the right job for you?" to which Juror Six replied "No." *Id.* at 41.

A third African American juror, Juror Ten, indicated on a questionnaire that her brother had faced criminal prosecution, but Juror Ten was not questioned on the matter.

[4] In the opening round of jury selection, the State sought to strike both jurors Three and Six for cause and sought to use a peremptory strike for Juror Ten. Newbold raised a *Batson* objection to the exclusion of jurors Three, Six, and Ten. The trial court took a brief recess to consider the objection; it permitted Juror Three stricken for cause because Juror Three indicated he could not be fair and impartial in the case. The trial court overruled the State's motion to strike Juror Six for cause but credited the State's explanation for using a peremptory strike, which was: "[W]hen [the State] asked her if we proved our case beyond a reasonable doubt, could she convict the Defendant, she said, 'I don't know,' meaning that she could not in fact act upon her duty as a juror." Tr. Vol. II, p. 62. The trial court accordingly permitted the peremptory strike based on Juror Six's uncertainty as to whether she could be fair and impartial in the case. As to Juror Ten, the trial court sustained Newbold's objection because the State had not provided a race neutral explanation for her peremptory strike.

[5] Newbold was found guilty of the following offenses: Level 2 felony dealing in methamphetamine; Level 4 felony possession of methamphetamine; Level 3 felony possession of methamphetamine; Level 6 felony possession of a narcotic drug; and Level 4 felony unlawful possession of a firearm by a serious violent felon. Newbold admitted that, in light of a prior conviction, he was guilty of unlawful possession of a firearm by a serious violent felon. Newbold also

admitted to the habitual offender allegation and pleaded guilty to a number of enhancements. On August 19, 2019, the trial court sentenced Newbold to forty years in the Department of Correction. This appeal followed.

## Discussion and Decision

[6] Newbold's sole challenge on appeal is that the trial court erred in concluding that the State, in seeking to strike Juror Six, was not purposefully discriminating against her based on her race. "Purposeful racial discrimination in selection of the venire violates a defendant's right to equal protection because it denies him the protection that a trial by jury is intended to secure." *Batson v. Kentucky*, 476 U.S. 79, 86 (1986). The use of a peremptory challenge to strike "even a sole prospective juror" on the basis of race violates the Fourteenth Amendment's Equal Protection Clause. *Addison v. State*, 962 N.E.2d 1202, 1208 (Ind. 2012); *see also Jeter v. State*, 888 N.E.2d 1257, 1262–63 (Ind. 2008). Furthermore, a race-based peremptory challenge violates the equal protection rights of the prospective juror, and therefore *Batson* prohibits parties from using racially based peremptory challenges regardless of the race of the opposing party. *Ashabraner v. Bowers*, 753 N.E.2d 662, 666–67 (Ind. 2001).

> The *Batson* Court developed a three-step test to determine whether a peremptory challenge has been used improperly to disqualify a potential juror on the basis of race. First, the party contesting the peremptory challenge must make a prima facie showing of discrimination on the basis of race. Second, after the contesting party makes a prima facie showing of discrimination, the burden shifts to the party exercising its peremptory challenge to present a race-neutral explanation for using the challenge.

Third, if a race-neutral explanation is proffered, the trial court must then decide whether the challenger has carried its burden of proving purposeful discrimination.

*Jeter*, 888 N.E.2d at 1263 (citations omitted).

[7] On appellate review, the trial court's decision as to whether a peremptory challenge was discriminatory is given great deference and will be set aside only if found to be clearly erroneous. *Cartwright v. State*, 962 N.E.2d 1217, 1221 (Ind. 2012). "The trial court's conclusion that the prosecutor's reasons were not pretextual is essentially a finding of fact that turns substantially on credibility. It is therefore accorded great deference." *Highler v. State*, 854 N.E.2d 823, 828 (Ind. 2006). This deference, however, is "not absolute[;] [r]ather, courts need not accept any facially neutral reason for striking a juror and should consider 'all relevant circumstances' in assessing *Batson*-challenged peremptory strikes." *Killebrew v. State*, 925 N.E.2d 399, 401 (Ind. Ct. App. 2010) (quoting *Batson*, 476 U.S. at 96-97), *trans. denied*.

[8] Newbold argues that the State's proffered race neutral reason for striking Juror Six was pretext for impermissible racial discrimination. A neutral explanation is "an explanation based on something other than the race of the juror." *McCormick v. State*, 803 N.E.2d 1108, 1111 (Ind. 2004). "Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race-neutral." *Purkett v. Elem*, 514 U.S. 765, 768–69 (1995). The State's explanation for striking Juror Six was that she "could not in fact act upon her duty as a juror" because she had expressed uncertainty about

finding Newbold guilty even in the event the State met its burden of proof. Tr. Vol. II, p. 62.

[9] There are two bases for Newbold's contention that the trial court clearly erred in determining the reason for the State's peremptory strike of Juror Six was not pretext for discrimination. First, Newbold points to the fact that the trial court sustained Newbold's *Batson* objection as to Juror Ten, an African American woman against whom the prosecutor also sought to use a peremptory strike because she indicated on a questionnaire that she had a brother involved in the criminal justice system. Tr. Vol. II, p. 66. Neither party had further questioned Juror Ten on the matter, however, and the trial court determined that the State's reason was not race neutral because "there was no exploration of the idea that perhaps [Juror Ten] may have had a reason not to be fair and impartial . . . other than the fact [of] her race." *Id.* at 68. Juror Ten subsequently served on the jury.

[10] Juror Six, by contrast, was questioned on the indication she gave that she might not be fair and impartial as a juror. Tr. Vol. II, p. 41. After expressing doubt that she could find Newbold guilty if the State proved its case, Juror Six agreed that serving as a juror was not "the right job for" her. *Id*. The full exchange is as follows:

> [State]: [I]f we proved our case, can you find the Defendant guilty?
>
> [Juror Six]: I don't know.
>
> [State]: You don't know. Why don't you know?

[Juror Six]: Well, yes.

[State]: Okay, well yes is a lot different than, yes I can. Do you have reservations about this case? Is this the right role for you, is this the right job for you?

[Juror Six]: No.

*Id.*

The State correctly notes that for-cause excusal, which would preclude *Batson*-objection review, is appropriate where a juror expresses uncertainty about her ability or unwillingness to "decide guilt or innocence impartially." *Daniel v. State*, 582 N.E.2d 364, 371 (Ind. 1991). Here, however inartful the prosecutor's questioning of Juror Six, Juror Six was questioned about her ability and willingness to fulfill her duty as a juror in the event the State met its burden of proof. Juror Six's indication that she may not be a fair and impartial juror was explored in a way that Juror Ten's indication was not. Thus, the trial court's overruling of Newbold's *Batson* objection to Juror Six's peremptory strike was not clear error because Juror Six's peremptory strike was supported by a race neutral explanation where Juror Ten's peremptory strike was not.

Newbold points to the State's inconsistent questions as the second basis for his argument that the trial court erred in determining the State's reason for Juror Six's peremptory strike was race neutral. Newbold speculates that Juror Six may not have understood the prosecutor's questions, and thus her answers expressing uncertainty do not support her peremptory strike. We disagree and consider the State's for-cause strike of Juror Three a helpful comparison. Juror

Three was less equivocal than Juror Six in expressing his inability to be a fair and impartial juror: when asked, "If [the State] proved our case, could you find the Defendant guilty?" Juror Three replied "I don't know." Tr. Vol. II, p. 40. Juror Three also expressed that he could not make a fair judgment against Newbold due to his prior experience with people with addiction. *Id.* at 31, 59–60. The State's reason for striking Juror Six was substantially similar to its reason for striking Juror Three; thus, the trial court validly exercised its discretion in crediting the prosecutor's explanation for striking Juror Six and overruling Newbold's *Batson* objection as to Juror Six.

[13] Given the relevant circumstances of Newbold's case, the trial court's acceptance of the State's race neutral explanation for its peremptory strike of Juror Six was not clearly erroneous especially because all potential African-American jurors were not, in fact, struck from the jury panel. *See Killebrew*, 925 N.E.2d 399 at 403.

## Conclusion

[14] The trial court's determination that the State presented a race neutral and non-pretextual explanation for its peremptory strike of Juror Six was not clearly erroneous. Accordingly, we affirm Newbold's convictions.

[15] Affirmed.


Kirsch, J., and Bailey, J., concur.